Wilfred J. Arbo, a white man, 34 years of age, with a second grade education, sues Maryland Casualty Company, the insurance carrier of Higgins Industries, Inc., in whose employ he was injured on July 22, 1944, alleging that he was totally and permanently disabled from doing work of any reasonable character, claiming compensation for 400 weeks at the maximum rate, less $120, the amount of compensation already paid to him. He further prayed that the fee of his attorney be fixed at the sum of twenty per cent of any amount recovered and that the contract of employment with the attorney be approved and that the attorney be paid direct.
Defendant admitted that it carried compensation insurance for Higgins Industries, Inc.; that plaintiff's duties were hazardous; that he was injured on the alleged date while employed by Higgins Industries, Inc., and that if compensation is due it should be at the rate of $20 per week. Defendant specially pleaded that plaintiff had substantially recovered from the injuries and that all compensation has been paid.
The court below awarded plaintiff compensation as prayed for and cast defendant for the expert witness fees of two of the physicians who testified for plaintiff, and further condemned defendant to pay the fee of the attorney for plaintiff in the amount of $1,000. Defendant has appealed.
In their brief, defendant's counsel contend that plaintiff has fully recovered from all injuries and, therefore, is not disabled, and point to what they consider a conflict in the medical testimony, the weight of which they say supports that contention.
On the other hand, plaintiff's attorney is equally as certain that the doctors' testimony shows that plaintiff is totally and permanently disabled, and that his physical condition inhibits him from returning to the heavy work which he performed at the time of the accident.
Plaintiff, at the time of his injuries, was classed as a burner supervisor and was charged with patrolling ships being built; he had to climb ladders and scaffolds to reach the hulls of the ships and to descend ladders to reach their holds. Plaintiff also had to pick up torches and materials and crawl down into the "double bottoms" of vessels, which are 24 inches in height, in order to supervise burning operations Plaintiff assisted burners in carrying torches and oxygen and acetylene hoses, and had to be on the move about the plant to the locations of the ships.
On the date alleged, while plaintiff was in a half stooping position instructing a burner, a mid-ship deck section toppled over striking him in the back, his final position being that he was on his hands and knees with his body located between the ribs of the section. After first aid was administered plaintiff, he was taken to Hotel Dieu where it was found that he had sustained several injuries, the most serious of which was a badly lacerated back. Dr. Max Greenberg, the Higgins plant physician, attended plaintiff and had X-rays made which showed that plaintiff had suffered a fractured pelvis. Plaintiff remained in bed for 14 days and, after a stay in the hospital of 22 days, he was permitted to return to his home, it being necessary for him to use crutches when leaving the hospital.
Plaintiff was paid compensation until September 4, 1944, for doing no work up to that time. On September 4, 1944, plaintiff returned to work at the Higgins plant, after having had an understanding with C.O. Robertson, a supervisor, that he would be given lighter work. Plaintiff at first was placed in what was described as the "shack" where the tips of torches are repaired; he also assisted in dispensing milk to other employees.
Shortly thereafter, plaintiff was assigned to work in the fabrication department as *Page 382 
burner operator, the work being on ground level, that is, not requiring him to climb ladders or to crawl into double bottoms. Plaintiff had to cut angle irons while working on a table, and a fellow employee testified that on occasions he had to pick up objects from the floor for plaintiff because plaintiff complained he could not stoop; other fellow employees testified that on occasions it was necessary to assist plaintiff in his work. Robertson, the supervisor, stated that after the accident he observed that plaintiff walked with a limp.
Plaintiff was continued on the payroll as burner supervisor until March 19, 1945, when he was demoted to burner. After a few weeks in the fabrication department, plaintiff was put to work on the "wet dock" which made his walking up a long, sloping gangplank necessary to reach the decks of ships. Plaintiff left Higgins Industries on April 4, 1945, and there is a dispute whether the employment was terminated due to a reduction of force, or because plaintiff was unable to perform his duties. We find it unnecessary to consider this in arriving at a conclusion herein.
During the time plaintiff worked in the Higgins plant after the accident, he constantly complained of having severe pains in his back and groin and Dr. Greenberg administered heat therapy.
Four medical experts testified, viz.: Drs. Sidney M. Copeland, John T. O'Ferrall and Edward H. Maurer for plaintiff, and Dr. H. Theodore Simon for defendant. These physicians made numerous X-rays and subjected plaintiff to many tests.
Dr. Simon, who made his examination of plaintiff on defendant's directions on October 30, 1944, which was about three months after the accident, testified that plaintiff had suffered a fracture of the ascending and descending rami of the left pelvic bone with a more than normal separation of the symphysis pubis. This physician concluded that plaintiff had sustained severe traumatism of the lumbar spine and that there was also some evidence of osteo-arthritis which would shortly clear up entirely or diminish to a point where there would be little disability. He recommended that plaintiff wear a belt to support his back.
An examination of plaintiff was made on December 13, 1944, by Dr. Copeland, at defendant's request. This witness found that plaintiff possessed a degree of disability and that an operation on both iliotibial bands, which he explained meant going into the hips, might somewhat relieve plaintiff.
Defendant had Dr. O'Ferrall examine plaintiff on April 16, 1945, and Dr. O'Ferrall testified that his X-rays showed that the symphysis pubis was separated more than normal but that there was no evidence of a pelvic fracture, and plaintiff's only disability was a slight limitation of the motion of the spine. However, he recommended that plaintiff wear a belt and avoid doing extremely heavy work for a period of 60 days.
In the lower court this case was heard on June 21 and 25, 1945. Plaintiff's attorney had Dr. Edward H. Maurer examine plaintiff on June 22d and again on June 25th, and Dr. Maurer testified that his examinations showed plaintiff's condition to be: "In my opinion, as the result of the direct trauma sustained in accident July 22, 1944, Mr. Arbo is suffering with the following conditions: acute bilateral sacroiliac, with sacroiliac separation; osteo-arthritis of the lumbar spine; myositis of the abductor muscles of the thighs, which may be due to the calcification in the muscular tissues. As to his present status, he is totally permanently disabled and unable to return to his former occupation."
[1] For some reason, Dr. Greenberg, the plant physician for Higgins Industries, who attended plaintiff, was not produced as a witness. The testimony of this doctor would have been of much assistance to the court in arriving at a decision of the case, and we must conclude, in as much as he was not produced, or his absence explained, that his testimony would not have been beneficial to defendant's case. Lee v. International Paper Co., La. App., 16 So.2d 679; McPherson v. Hillyer Deutsch-Edwards, La. App., 143 So. 89; Johnson v. Demange Godman Lumber Co., La. App., 141 So. 779.
[2] Plaintiff, after the accident, did not and could not carry out the duties of *Page 383 
a burner supervisor, and the findings of the medical experts, particularly that of Dr. Maurer who examined plaintiff on the last day of the trial, convinces us, as it must have convinced the trial court, that plaintiff is totally and permanently disabled and is entitled to 400 weeks compensation at $20 per week, less the $120 which he has already been paid.
[3] The record shows that after leaving Higgins Industries, Inc., plaintiff secured employment as a driver with the Camp Plauche bus line, in which pursuit he is still engaged, earning $63 per week. Counsel for defendant insist that in view of plaintiff's ability to execute the duties of his present occupation he is not entitled to compensation, as he cannot be regarded as totally and permanently disabled. The fact that plaintiff is able to discharge the duties of a bus driver at a substantial wage does not deprive him of the right to recover compensation, as the work imposed by his present occupation is dissimilar to and not as onerous as that which must be performed by a burner supervisor. Ranatza v. Higgins Industries, Inc., La. App., 18 So.2d 202.
[4] After the accident plaintiff worked for Higgins Industries, Inc., from September 4, 1944, to April 4, 1945, or a term of thirty weeks, during which time he was paid wages comparable in amount to those earned before the accident. Counsel for defendant vigorously contend that in addition to the credit of $120 for the compensation which was paid plaintiff, the defendant is entitled to a further credit of $20 for each of the thirty weeks that plaintiff was employed after sustaining the injuries. Attorney for plaintiff argues that defendant in its answer made no claim for such credit and urges us to give no consideration to defendant's contention.
Identical issues were raised in the case of Daigle v. Higgins Industries, Inc., and Maryland Casualty Company, La. App.,29 So.2d 374, and were passed on by us in an opinion handed down in said case this day on rehearing, and for the reasons therein stated the defendant in the present case should be allowed further credit of $600 on the judgment, being $20 for each of the thirty weeks between September 4, 1944, and April 4, 1945, that plaintiff worked for Higgins Industries, Inc., subsequent to the accident.
[5] Counsel for defendant complains that the lower court erred in condemning defendant for the fee of plaintiff's attorney in the amount of $1,000. Plaintiff prayed in his petition that the contract of employment with his attorney be approved by the court, and that the fee be ordered paid direct to plaintiff's counsel. Nowhere in the Employer's Liability Act, Act No. 20 of 1914, is there any provision imposing liability on a defendant in a compensation suit for the fee of the plaintiff's attorney, and the allowance of the $1,000 was unwarranted. Bouchon v. Southern Surety Co., 151 La. 503, 91 So. 854.
[6] For the reasons assigned, the judgment appealed from is amended so as to read as follows:
It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Wilfred J. Arbo, and against defendant, Maryland Casualty Company, for compensation at the rate of $20 per week for a period not exceeding 400 weeks, commencing July 29, 1944, subject to a first credit for compensation paid of $120, and subject to a second credit of $600 for the thirty weeks plaintiff worked after the accident, with legal interest from the due date of each installment until paid.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiff and against defendant for the expert witness fees of Dr. E.H. Maurer in the sum of $75, and Dr. S.M. Copeland in the sum of $50.
Defendant-appellant is to pay all costs of the lower court, and plaintiff-appellee is to pay the costs of this appeal.
And as amended the judgment appealed from is affirmed.
Amended and affirmed. *Page 384