Peter Hingle, a painter who was employed by Higgins Industries, Inc., brought this suit on April 12, 1946, against the Maryland Casualty Company, Higgins' Insurance carrier, alleging total disability and claiming 400 weeks compensation at the rate of $28 per week and, in the alternative, lessor amounts under other sections of the workmen's statute.
The defendant insurance company admitted that Hingle was employed by Higgins Industries, Inc., and that he was injured in the course of his employment, but denied that he was permanently disabled, averring on the contrary that he had completely recovered and that all compensation due him had been paid. In the alternative, it was averred that if any compensation be due plaintiff it should be computed under subparagraph 15 of paragraph (D) of subsection (1) of Section 8 of the statute as amended Act. No. 242 of 1928, p. 358, relating to partial permanent disability.
There was judgment below in plaintiff's favor awarding him 400 weeks compensation at $20 per week subject to certain credits. Defendant has appealed.
Peter Hingle was injured on August 14, 1944, when he tripped on the stair treads and fell to his knees in the "City Park Plant" of his employer. He suffered an injury to his knee which is described by two of the medical experts as a tear or laceration of the "medial semilunar cartilage of the right knee." He was given first aid treatment at his employer's clinic and was instructed to wear a brace. He returned to work and on August 21, 1944, was transferred from the finishing room of the "production" department to the "construction" department, where he remained until September 12, 1944. Between that date and October 14, 1944, he was off duty and received compensation. He again returned to Higgins on October 15, 1944 and worked until November 26, 1944. All of this time he was being treated at the clinic. As plaintiff complained of continuous pain *Page 282 
in the knee he was sent to Dr. Theodore Simon, who recommended an operation to remove the internal semilunar cartilage of plaintiff's knee. He was examined by Dr. Sidney Copeland on March 28, 1945, who was to perform the operation. However, as he was called out of the city, the cartilage was removed by Dr. Joseph T. Scott on March 29, 1945.
On May 29, 1945, Dr. Scott ordered plaintiff to return to work. He protested that he was unable to work so Dr. Scott sent him to Dr. Ernest Celli of the staff of the Illinois Central Hospital, who removed some fluid from plaintiff's knee and told him to remain at home for three or four weeks, by which time he should have completely recovered. On July 10, 1945, Dr. Scott again discharged plaintiff. He attempted to return to work, but when told that he was "terminated" and would have to be processed through the personnel office for re-employment, he made no effort to be re-employed. On July 12, 1945, Hingle consulted Dr. E.H. Maurer and remained under his care until the time of the trial. Meanwhile he also visited Dr. Theodore Simon and Dr. Charles J. Wheeler.
The principal contention of the defendant is that when injured Hingle was employed as a painter in the "production" department and not the "construction" department. They cite the jurisprudence of this State to the effect that the test of whether an employee is totally disabled depends upon his ability to perform the duties and obligations of the position he occupied when injured and that, since Hingle was, when injured, employed in the "production" department, the duties of which were far less onerous than the "construction" department, he could not have been totally disabled, since the injury to his knee would not prevent his doing what he was called upon to do when he was injured; that is to say, "rubbing down" and spraying the "gages, skates and skegs".
It appears from the record that the work which Hingle was doing in the "construction" department involved a certain amount of climbing on ladders and occasionally "kicking out" the ladders, which, it seems, is a rather hazardous undertaking and is for the purpose of moving the ladder while occupied by the painter without his returning to the ground.
Defendant also suggests that much of plaintiff's trouble is caused by arthritis due to his age which, when he was injured, was fifty-three years.
Hingle, according to the record, had been a painter for thirty-five years. He testified that he had worked in no other capacity during his lifetime. It is true, that at the time he was injured he was in the finishing room of the "production" department, where he was painting small objects and that it required less effort for him to discharge the duties of that job than it would have required for him to paint the exterior of buildings or ships as he had been doing prior to and after his injury, but we doubt whether the occupation of a painter can be divided into two departments — "production" and "construction" as suggested by counsel. Plaintiff's occupation, when injured, was that of journeyman painter. However, it appears that Hingle was unable to do any kind of work.
The following doctors testified as medical experts: Drs. E.H. Maurer and Charles J. Wheeler for the plaintiff and Drs. Theodore Simon, Sidney Copeland, Jos. T. Scott and Ernest Celli for defendant.
Dr. Maurer testified that in his opinion plaintiff was unable to do any kind of painting and that he was "definitely positive that his (plaintiff's) complaints are honest."
Dr. Wheeler, who examined plaintiff in May, 1945, and again on July 1, 1946, the day of the trial, confirmed Dr. Maurer's findings and declared that the plaintiff was totally and permanently disabled.
Dr. Copeland did not examine plaintiff until the day before the operation, March 28, 1945, and knew nothing of his condition at the time of the trial.
Dr. Simon was of the opinion that there was a 10% disability in the injured leg, but he could, find no other abnormality. Discussing the question of arthritis he testified that there was a slight amount of "hypertropic osteo-arthritis,", but no more than was to be expected in a man of that age.
Dr. Scott testified that on July 10, 1945, when discharged by him, the plaintiff was in as good physical condition as he had *Page 283 
been prior to the accident, and that he was able to do "any kind of work". He found slight evidence of arthritis, but was of the opinion that it would soon disappear.
Dr. Celli's testimony is of no importance. He merely "aspirated" plaintiff's knee on May 24, 1945, and stated that it was a normal post-operative condition. He testified that at that time he was of opinion that plaintiff should completely recover in three or four weeks.
Hingle testified that he is unable to do any kind of work without severe pain, in fact, that he is almost constantly in pain and has to take sleeping powders in order to get any rest at all at night. He is corroborated by his wife and his daughter. When plaintiff was asked why he did not go back to work he answered: "I am afraid I can't make it with that leg. I know that the pain I get walking and going upstairs and things. I know I could not handle my kind of work. I don't want you to think I would want to stay there and collect the $20.00 they wanted to give me when I was making from $75. to $100. a week at times by working overtime. I don't see why a man wants to stay off at $20.00 a week."
Defendant employed a Pinkerton detective by the name of James Cooney, who testified that he had offered Hingle employment on a very lucrative basis in Slidell, Louisiana, but that Hingle had told him that "he could not entertain any proposition for work, he was disabled". "Positively", he said, "he was sure he could not. He very nearly lost the use of his leg". Cooney also stated that he had Hingle under surveillance and that on various occasions he noticed that "he was walking with severe difficulty", and that he had great trouble getting on and off street cars.
John H. Perron, another detective also employed by defendant, testified that Hingle was limping on the wrong leg, but he might easily have been mistaken, since it is unlikely that Hingle, if unaware that he was observed, would wilfully have limped on the wrong leg, and if aware of surveillance, he would hardly make such a mistake. Moreover, as we have pointed out, the doctors seem impressed with Hingle's sincerity and we believe it unlikely that he would feign disability in order to collect $20 per week when he could earn $75 or more a week at work.
[1, 2] As to partial permanent disability which we are urged to find in this case as was found in Falgoust v. Maryland Casualty Company, La. App., 22 So.2d 312, we perceive a distinction in Hingle's disability which is, at present, at least total, for he cannot work at all without pain. " 'Competency,' accompanied by active pain, amounts to disability". Stieffel v. Valentine Sugars, 188 La. 1091,179 So. 6, 15. If he improves and his condition changes there is always, under the compensation law, an opportunity to correct the award to conform to the prevailing state of the workman's disability. Section 20 of Act No. 20 of 1914, as amended, Act No. 85 of 1926.
[3,4] Our conclusion is that Hingle is permanently and totally disabled. Defendant contends, however, that it should have credit for the weeks during which Hingle either received compensation or salary equal to or in excess of $20 per week. In this defendant is correct. Arbo v. Maryland Casualty Company, La. App., 29 So.2d 380. The judgment appealed from allows this credit as appears from the following excerpt from the judgment: "It is further ordered, adjudged and decreed that the compensation allowed the plaintiff shall not be collectible for the period during which he has received from his employer, Higgins Industries, Inc., wages equal to or exceeding the amount of the compensation; and shall not be collectible for the weeks during which he has already been paid compensation, at the rate of $20.00 per week."
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.