65 So.2d 397 (1953)
SCOTT
v.
FULTON BAG & COTTON MILLS.
No. 19933.
Court of Appeal of Louisiana, Orleans.
May 25, 1953.
Rehearing Denied June 19, 1953.
Writ of Certiorari Denied August 6, 1953.
*398 Baldwin, Haspel & Molony, Conrad Meyer, III, New Orleans, for defendant-appellant.
Frederick J. Gisevius, Jr., New Orleans, for plaintiff-appellee.
JANVIER, Judge.
This is a suit in compensation. The plaintiff contends that, as a result of an injury resulting from an accident which arose out of and occurred in the course of employment by defendant corporation, she has sustained permanent total disability to do work of any reasonable character. LSA-R.S. 23:1221(2). She contends that she is entitled to 65% of the weekly wages which she was earning for a period not in excess of 400 weeks.
Defendant, admitting the occurrence of the accident and that plaintiff sustained injuries which, for a time, caused total disability, maintains that plaintiff was merely a common laborer, and that she has now recovered to such an extent that she can do most of the ordinary jobs in which she was previously employed or in which common labor may be employed, and that consequently she is not entitled to compensation for permanent total disability, but should be paid for only the partial loss of the use of her right hand. LSA-R.S. 23:1221(4)(e); that the use of her right hand has been impaired to the extent of only 40% and that therefore she is entitled to compensation under paragraph (4)(o) as it limits the effect of paragraph (4)(e) of LSA-R.S. 23:1221, and that accordingly she is entitled to only 65% of 40% of her wages for a period of 150 weeks.
In the Civil District Court for the Parish of Orleans there was judgment in favor of plaintiff for $23.40 per week for a period not in excess of 400 weeks, subject to a credit of 22 weeks for which compensation has already been paid. There was judgment taxing as costs the fees of three medical experts which were fixed at $50 each, and also erroneously taxing as costs the fee of the attorney for plaintiff, which was fixed at 20% of the amount of the award and accrued interest. Later it was stipulated by counsel that the fee should not have been taxed as costs. Defendant has appealed.
During the course of the trial counsel for plaintiff demanded the right to amend the claim so as to show the weekly wages at a greater amount than was the amount set forth in the petition, and counsel for defendant demanded the right to amend the answer so as to show that the disability to the hand of plaintiff amounted to 30% instead of the 40% as set forth in the answer.
The record is voluminous, consisting of 494 pages of testimony, most of which is taken up by the technical testimony of medical experts on the question of the extent of the disability of plaintiff, and on the question of whether or not she can do certain portions of the various kinds of work in which she was formerly engaged.
*399 Were we called upon to determine, without the benefit of the findings of our Brother below, to just what extent plaintiff is now disabled, we would find ourselves in a most difficult position, because on both sides there are medical experts, concerning the ability of whom there can be no doubt at all, and, as we read the testimony of each, we are conviced of the correctness of his evidence as to the disability of plaintiff and we maintain this conviction until we read the testimony of one of the experts on the other side.
The lay evidence as to plaintiff's disability substantially preponderates in favor of plaintiff's position that she can use her right hand only for short intervals and that even during those intervals she cannot close her fist or exert any pressure when she attempts to do so, or when she attempts to grip any object or implement with which she may be required to work.
About the testimony of the lay witnesses who testified that plaintiff cannot perform any of the necessary functions of a common laborer, there is much which indicates that these lay witnesses were most anxious to assist plaintiff in her effort to secure a judgment for a large amount but we feel that even if we should disregard that evidence entirely, still the record would not justify the conclusion that the findings of the District Court were manifestly erroneous. During the course of the trial, on several occasions, the plaintiff was subjected to various tests. The Trial Judge witnessed her reactions to these tests, and as a result, coupled with his evaluation of the medical testimony, reached the conclusion which we are asked by the defendant to disregard. The Trial Judge was in a much better position than are we to determine whether or not plaintiff's condition was such as she claims.
After a careful study of the tremendous record, all that we can say is that it cannot be said that the findings of the District Court are not manifestly correct. And since these findings are set forth in the "Reasons for Judgment," which indicate that the District Judge gave full consideration to all the evidence, and since those reasons give a complete résumé of the record, we have concluded to set them forth in full:
"Plaintiff, Derby Lee Scott, brings this action under the Workmen's Compensation Act, against the defendant, The Fulton Bag and Cotton Mills, a foreign corporation authorized to do business in the Parish of Orleans, State of Louisiana, to recover Workmen's Compensation because of injuries she allegedly received to her right hand, arising out of an accident that took place on the seventeenth day of November, 1949, while the plaintiff was in the employ of the defendant.
"It is admitted that the plaintiff was in the defendant's employ and acting within the scope of her employment at the time of the accident.
"It is admitted further by the defendants that plaintiff received injuries to her right hand when it was caught between the rollers of a machine known as a `Black Bottom' machine. The extent of plaintiff's injuries and the amount of compensation to be awarded her is the subject of the dispute in this case.
"Plaintiff contends that she is totally and permanently disabled to do any work of the same or of a similar character to that which she was employed to do. If the plaintiff is permanently totally disabled from performing work of the same or a similar character, she is entitled to receive compensation from the date of the accident and injury, not to exceed four hundred weeks, less credits for any amounts previously paid to her.
"The defendant contends that the plaintiff is capable of performing work of the same character as she had done before, and that therefore she is entitled to receive only, for a period of one hundred and fifty weeks, a percentage of the weekly compensation.
"The record shows that on the date of the accident plaintiff was engaged as a feeder, feeding bags into a machine known as a `Black Bottom' machine. This machine processes cloth *400 cotton-picking bags with asphalt. It was shown that besides performing her duties as a feeder, plaintiff's duties included the operation of a valve, which she did with her right hand, (she being right handed) which allowed heated asphalt in liquid form to fall upon a paper-covered belt of the machine. In the event the asphalt was cold or gummy, plaintiff's duties included spreading the congealed or gummy asphalt with a knife or spreader. This operation was also done by hand.
"The record of plaintiff's employment shows that she was employed as a mender, a turner, a table-feeder, a clipper, a brattice worker, a checker, a porter, and a worker at the `Black Bottom' machine.
"Mr. Swayne, the defendant's superintendant, testified that the plaintiff could be switched from one to the other of the duties shown on her employment card, and that the plaintiff had worked as a porter, engaged in sweeping floors. Plaintiff denied vigorously that she ever worked as a porter in the employ of the defendant.
"The court is of the opinion, from all the testimony in the case, that plaintiff's employment was that of a common laborer, needing very little training or experience to perform any of the duties shown by the record of her employment. The important question in this case is whether or not plaintiff can do any work of the same or a similar character to that which she was employed to do.
"Plaintiff's testimony is that at the time of her discharge by Dr. Geismar (about May 4, 1950) her hand was swollen and she was unable to return to work. She further testified at the time of the trial that her hand still swells and it is necessary for her to soak it in hot water with epsom salts in the mornings, and that atmospheric changes cause her hand to pain her.
"The evidence is that the plaintiff suffered a severe crushing injury to her right hand, involving the index, middle and ring fingers. She testifies that she is unable to close her hand or make a fist, and that she has not worked from the date of the accident until the time of trial.
"Her testimony with reference to the swelling in her hand is substantiated by Mary Brent, with whom plaintiff resides, who testified that the plaintiff is unable to do any but the lightest of chores that involve the use of her right hand; that she cannot lift a frying pan. Plaintiff's testimony in this respect is also borne out by the testimony of Elise delaHoussaye, who testified that the plaintiff's hand was swollen for a period of three or four months after her discharge.
"Dr. Blaise Salatich testified that plaintiff is unable to flex her fingers, that she has a loss of grip; that her grip is uncontrolled and that she cannot contract her fingers into her hand; that she had suffered a crushing injury to the soft tissues of her fingers which were involved in the accident, i. e. the index, middle and ring fingers; that her hand swells; that she could not grasp a knife handle; that pressure on the stump of her amputated finger aggravated pain and that she could not lift bags because it might aggravate the swelling of the hand, and that plaintiff, in the use of her hand, would in his opinion be awkward; that her disability is permanent.
"In a demonstration to the court, Dr. Salatich testified that he was unable to close the fingers of plaintiff's hand into her palm; that she could not carry on any functions with her right hand; that she could not handle machinery such as the testimony shows it is necessary for the plaintiff to handle in the operation of the `Black Bottom' machine for any period of time without pain, and that in his opinion the plaintiff is totally disabled if she has to use her right hand doing common labor.
"Dr. E. H. Maurer testified that the plaintiff had a limited grip; that she could perform some duties; that she would be clumsy; that there would be an increased chance of her having an *401 accident due to the fact she was working with an injured hand; that she lacks grip in the hand; that she could return to work, but he didn't know how good she might be, and that she would have some difficulty in working, that her hand would tire and she would be a clumsy worker.
"Dr. Geismar testified that in his opinion the plaintiff could make a fist with her right hand, and close the fingers into the palm, and this he demonstrated in the courtroom on the day he testified, which was a Thursday.
"The case was continued from Thursday until Monday, at which time the plaintiff resumed the witness stand and testified that the manipulations done by Dr. Geismar in the closing of her hand, had caused her hand to swell on Friday morning, and in this she was corroborated by Mary Brent. She testified further that there was still pain in her hand on the Monday when she was testifying.
"It is the opinion of this court, considering the testimony of the plaintiff herself, and that of Mary Brent to the effect that her hand, even at the date of this trial, still swells in the mornings when she arises, and that it is necessary for the plaintiff to soak her hand heated water each morning, and considering further the testimony of the plaintiff and Mary Brent to the effect that after the examination and manipulation of plaintiff's hand by Dr. Geismar, the hand swelled and caused pain the following morning, and the testimony of Elise delaHoussaye to the same effect: Taking all this lay testimony in conjunction with that given by Dr. Salatich, Dr. Maurer, and the testimony of Dr. Duncan that the hand might swell from soft tissue injury, it is the opinion of this court that the plaintiff is still suffering because of the injury to her hand which she received on November 17, 1949, and that she is permanently and totally disabled to do any of the duties which her reccord of employment with the defendant shows she was employed to do; that she could not return to any work which required the use of her right hand without suffering pain.
"Accordingly the plaintiff is entitled to a judgment of 65% of her salary, which the court finds to be 85¢ per hour for a forty-hour week, or $36.00 per week. The award in compensation will thus be fixed at $23.40 per week for a priod not to exceed four hundred weeks, subject to a credit of twenty-two weeks' compensation paid."
Our conclusion coincides with that of the District Judge that since plaintiff cannot perform many of the functions which, in her various occupations as a laborer, she had previously performed, she is entitled to compensation for total permanent disability. We have been much influenced in reaching this conclusion by the decision of our Supreme Court in Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695. Although in that case the employee was found to have been a skilled laborer, we do not see that that fact provides a distinction between that case and this.
Our interpretation of the conclusions reached there and the reasons given for those conclusions makes it necessary that we say that even in the case of a common laborer as distinguished from a skilled laborer, whenever the injuries make it impossible for the laborer to perform a substantial number of the functions which were normally required, the injuries have produced inability to do work which was formerly donein other words, to do "work of any reasonable character," and that, as a legal result, the employee is entitled to compensation for permanent total disability.
It is recognized, in the case of the skilled laborer, that since a period of training and learning have developed a special ability to do a particular kind of work, or to operate a particular kind of machine, if the injury which has been sustained makes it impossible for the employee to continue doing that particular kind of work, or some work very similar to it, or to operate some particular kind of machine or tool, or some machine or tool closely resembling it, the employee can no longer do work of any reasonable character.
*402 In the case of the common laborer, there are so many different kinds of work which may be done that ordinarily total disability does not result, if the injury causes disability to do any particular kind of work if the employee, in spite of the injury, may still successfully do what is required in a large number of other occupations requiring only common labor. But where the injury is such that the employee is prevented from undertaking a substantial number of the different operations ordinarily open to a common laborer, we think that he is totally disabled and as such is totally disabled just as the skilled laborer who is prevented from undertaking any work substantially similar to that in which he was formerly engaged.
We do conclude, however, from the record which is before us that plaintiff's weekly earnings were $34, based on a fiveday week at 85¢ per hour, and we therefore conclude that plaintiff was entitled to 65% of $34 for a period not in excess of 400 weeks, subject to a credit for those weeks for which she had already received compensation. The weekly compensation due her therefore is not that which she was allowed but is $22.10 per week.
We think that the weekly wage was correctly based on a five-day week. In Tulane Law Review, Vol. XIX, page 308, will be found a lengthy discussion of the various decisions in which the courts have considered the question of whether compensation should be paid on the basis of a five-day week, or a six-day week, or a seven-day week, and our conclusion is that, since the record here shows that plaintiff was employed regularly on a five-day week basis, although at times she may have worked an extra day or extra hours, her compensation should be based on a five-day week.
Plaintiff, as has been stipulated, is not entitled to recover her attorney's fee from the defendant, Bouchon v. Southern Surety Co., 151 La. 503, 91 So. 854, and Arbo v. Maryland Casualty Company, La.App., 29 So.2d 380, 382, and to have it taxed as costs. The judgment of the District Court must be amended accordingly.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended by the reduction of the weekly award to $22.10 and by the elimination of the fee of the attorney for plaintiff as an item of costs, and as thus amended and in all other respects the judgment appealed from is affirmed; appellant to pay all costs.
Amended and affirmed.