GUIDRY, J.
LA resident of an apartment complex appeals a summary judgment rendered in favor of the complex dismissing his claim for damages for injuries he sustained after falling on the wet, tile flooring of an en-tranceway of the complex on a rainy day. For the following reásons, we affirm.
FACTS AND PROCEDURAL HISTORY
On a dark and stormy night in September 2012, James King left the Allen Court Apartments,' where he resided, to go get something to eat. When he returned, he parked his car near the back entrance to the building, which was nearest to his apartment, and entered the building through the same doorway from which he had exited roughly a half hour before. It was still windy and lightly raining as he stepped through' the doorway, and’shortly after entering the building, his foot slipped on the tile floor arid he fell, breaking his right leg.
On August 30, 2013, Mr. King filed a petition for damages - against Affordable Housing Partners, LLC, Western World Insurance Company, and J.M. Property Management, Inc. By an-amended petition filed September 18, 2013, Mr. King added Allen Court Affordable Housing, a Louisiana partnership in commendam, as an additional defendant.[1] The defendants answered Mr. King’s petition to generally deny any liability for his injuries and later filed a motion.for summary judgment asserting that no defect existed on the premises nor could-Mr. King establish that such an alleged defect caused his accident. The trial court granted summary judgment in favor of the defendants, dismissing Mr. King’s'petition for damages with-prejudice, from Which jiidgment Mr. King now appeals. ' -
| «STANDARD OF REVIEW
It is well settled that an appellate court reviews a trial court’s decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. GameStop, Inc. v. St. Mary Parish Sales and Use Tax Department, 14-0878, p. 6 (La.App. 1st Cir.3/19/15), 166 So.3d 1090, 1094, writ denied, 15-0783 (La.6/1/15), 171 So.3d 929. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 969; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered in favor of the mover if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion, show there is no genuine issue as to material fact, and that *838 the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2).
On a motion for summary judgment, the burden of proof is on the mov-ant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the- adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
J^DISCUSSION
In this appeal, Mr. King raises three assignments of error. We will first address Mr. King’s contention that the trial court erred in not providing written reasons for judgment, which he timely requested.
Article 1917 of the Louisiana Code of Civil Procedure provides that the court shall give its findings of fact and reasons for judgment in writing when requested to do so by a party, provided the request is made not later than ten days after the mailing of the notice of the signing'of the judgment. La. C.C.P. art. 1917(A). In this case, rather than drafting its own reasons, the trial court adopted memoran-da drafted by the defendants as its reasons for judgment.
On January 22, 2015, the trial court issued a “Ruling” in which it declared “[t]he Defendants’ Motion for Summary Judgement is hereby GRANTED for reasons stated in their memoranda in support thereof and in reply to the Plaintiffs opposition.” On February 2, 2015, Mr. King filed a request for written reasons pursuant to La. C.C.P. art. 1917. In response, the trial court issued an “Amended Ruling” on,February 19, 2015, wherein it declared “[t]he Defendants’ Motion for Summary Judgment is hereby GRANTED for reasons stated in their memoranda in support thereof and in reply to the Plaintiffs opposition and adopted by this Court as its own.” (Emphasis in original.) In both rulings, the trial court directed that á judgment be submitted in accordance with the rulings. A written judgment, consistent with' the trial court’s rulings, was signed on February 24, 2015.
In raising this assignment of error, Mr. King makes, no reference to the foregoing statements in the rulings of the trial court. Evidently, Mr. King does not regard the trial court’s adoption of the defendants’ memoranda as complying with' the mandate of La. C.C.P. art. 1917(A). Other than noting that he “is entitled” to written reasons, Mr. King does not appear to seek any specific relief from this court regarding the trial court’s alleged failure to provide written reasons.
sWe deciine to rule on whether such adoption of reasons by the trial court complies with the mandate of La. C.C.P. art. 1917(A). However, we observe that no penalty is provided in La. C.C.P. art. 1917 for failure to comply with the statute’s mandate. It is not the function of the judicial branch in a civilian legal system to legislate by inserting penalty provisions into statutes where the legislature has chosen not to do so. Carter v. Duhe, 05-0390, p. 10 (La.1/19/06), 921 So.2d 963, 970. But we do reiterate, as noted by this court in Bell v. Ayio, 97-0534, p. 3 (La.App. 1st Cir.11/13/98), 731 So.2d 893, 896, writ denied, 98-3115 (La.2/5/99), 738 So.2d *839 7 (quoting State, Dept. of Transportation and Development v. August Christina & Brothers, Inc., 97-244, p. 7 (La.App. 5th Cir.2/11/98), 716 So.2d 372, 376), “the better course by far is for a trial judge to author any reasons for judgment himself, thereby giving us the benefits of his thoughts and his insights into the litigation under consideration.” “It is one thing for victorious counsel to prepare a judgment comprised of the stark, final determinations of a case. It is quite another for a counsel to present as the inner thoughts of a judge what amounts to a well-written brief.” Bell, 97-0534 at p. 3, 731 So.2d at 896 (quoting Miller v. Smith, 391 So.2d 1263, 1265 (La.App. 1st Cir.1980), aff'd, 402 So.2d 688 (La.1981)).
Thus, we' acknowledge that this court cannot place any real value on the written reasons drafted entirely by counsel for one of the parties. Bell, 97-0534 at p. 3, 731 So.2d at 896. But as this matter comes before us on review of a summary judgment, no deference would be given to the findings or reasoning of the trial court in any event, as we must consider the matter de novo. See GameStop, Inc., 14-0878 at p. 6, 166 So.3d at 1094.
In his remaining, related assignments of error, Mr. King contends that viewing the evidence in a light most favorable to him (the opponent to the motion for summary judgment) establishes questions of material fact that would make | (¡summary judgment improper. See Rodgers v. State Farm Mutual Automobile Insurance, 15-0868, p. 2 (La.6/30/15), 168 So.3d 375, 376.
In his petitions, Mr. King alleged that the defendants were liable based on La. C.C. arts. 2696 and 2697[2] and La. C.C. arts. 2315, 2317, 2317.1, and 2322. The liability imposed under La. C.C. arts. 2696 and 2697 is essentially strict liability for vices and defects that cause harm to a lessee. Johnson v. Thomas, 13-0081, p. 7 (La.App. 1st Cir.12/27/13), 137 So.3d 632, 637. The liability imposed under La. C.C. arts. 2315, 2317, 2317.1, and 2322 following the 1996 tort reform is essentially that of negligence. See Broussard v. Voorhies, 06-2306, p. 5 (La.App. 1st Cir.9/19/07), 970 So.2d 1038, 1042, writ denied, 07-2052 (La.12/14/07), 970 So.2d 535; see also William E. Crawford, 12 La. Civ. L. Treatise, Tort Law §§ 1:18, 2:5 (2d ed.). The'strict liability imposed on a lessor was unaffected by the tort reform legislation that enacted La. C.C. art. 2317.1. in 1996. See Thompson v. BGK Equities, Inc., 04-2366, pp. 4-5 (La.App. 1st Cir.11/4/05), 927 So.2d 351, 354, writ denied, 05-2405 (La.3/17/06), 925 So.2d 550; Heflin v. American Home Wildwood Estates, L.P. 41,073, p. 5 (La.App.2d Cir.7/12/06), 936 So.2d 226, 230.[3]
The sole distinguishing factor between negligence and strict liability is one 17of scienter. While actual or constructive knowledge must be proven to establish negligence, it is not necessary to establish *840 strict liability. See Thompson, 04-2366 at p. 5, 927 So.2d at 354. Under either burden of proof; a defect is defined essentially the same way. For purposes of Article 2696, a defect is defined as a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances. See Thompson, 04-2366 at p. 5, 927 So.2d at 354; Heflin, 41,073 at p. 6, 936 So.2d at 231. Under Article 2317.1, a defect is a condition creating an “unreasonable risk of harm,” which requires the trier of ¡fact to decide whether the social value and utility of a hazard outweighs, and thus justifies, its potential harm to others. Heflin, 41,-073 at pp. 6-7, 936 So.2d at 231. The existence of a defect may not be inferred solely from the fact that an accident occurred, but the plaintiff must prove that a defect existed and that the, defect caused the plaintiffs damages. Thompson, 04-2366 at p. 7, 927 So.2d at 355.
The following evidence was offered in conjunction with the motion for Summary judgment: Mr. King’s original and amended petitions for damages, the defendants’ responses to interrogatories and request for production of documents propounded by'Mr. Kirig, and the depositions of Mr. King, Arenice Tate, and Hazel Thomas. Ms. Tate and Ms. Thomas were residents of the Allen Court Apartments at the time of Mr. hang’s injury and, were witnesses to his accident.
In his petitions, Mr. King alleged that “wet flooring and/or- carpeting” constituted an unreasonably dangerous condition and defect. In his deposition, he simply testified that the “floor was wet.” As he explained, people coming in and out of the doorway tracked water onto' the floor and allowed the wind to blow rain inside the building onto the floor. Mr. King acknowledged that there was a rug at the entrance where he fell for people to wipe their feet on, but he could not recall whether he wiped his feet on the rug or not. He described the floor at the entrance as being “waxed tile.” He said it had been raining maybe an hour or two before he |8fell, but “[i]t wasn’t a heavy, heavy rain,-no torrential rain;-just steady.” He said it was'not raining earlier that day, but the ground outside was “pretty wet” at the time he traversed the parking lot and sidewalk to re-enter the building. Mr. King, who had resided in the apartment building for four years prior to the accident, testified that he had never previously slipped or fallen in the area, even on rainy days.
Ms. Tate, who was returning from the laundry room at the apartments at the time of Mr. King’s accident, testified that she saw Mr. King when he fell. She too described the floor as being wet and explained “[b]y tracking in, you know you’re bringing water in there.” She stated that there was a little puddle of water on the outside of the building at the entranceway that people could--walk through and track water into the. building and that the wind blowing could cause water to come into the building as well., Ms. Tate mentioned that Mr. King “could have walked on, you know, that little puddle and slipped as he came in.” Ms. Tate stated that it had been raining all day on the date of the accident and that she noticed that the floor was wet when she returned home after getting off work at 2:00 p.m. She also stated that she had almost fallen in, the hallway that day, but admitted there was no occasion where she had slipped and fallen coming in or out of the entrance in the couple of years prior to the accident.
Ms. Tate’s mother,. Ms. Thomas, was also deposed regarding Mr. King’s accident. Although she indicated that she actually witnessed Mr. King’s fall, she later related that what she saw was that Mr. *841 King “had hit the floor” and acknowledged that she did not see Mr. King actually open the door and walk into the building. Ms. Thomas initially stated that she did not know what “may have” caused Mr. King to fall, but on being asked a second time, she stated “[h]onestly, the wet ,rug.” Later, she stated that she did not remember if there was a floor mat or rug inside the hallway near the entrance of the door on the day of the accident, although she admitted having seen a rug there some time during her four-year presidency in the apartment building. She described the rug as “[k]ind of sponge-like with the rubber under the bottom.” She stated that the entranceway floor “had a little water” that had come from “under the door” because the wind was blowing.
In response to interrogatories propounded by Mr. King, the defendants stated that they were unaware of any previous incidents and/or complaints from any person claiming any injuries from the flooring/carpeting in the area where Mr. King fell nor any injuries from any flooring/carpeting and/or any defect on the premises within the past five years prior to their response. Defendants further responded that they were unaware of any repairs or revisions being made to the flooring in the past six years prior to their response and that on January 17, 2013, a governmental inspection of the complex was performed by Jeff Harvey of the Louisiana Housing Corporation.
Mr. King’s physical description of the hallway at the entrance where he fell, is not disputed;[4] thus, the only issue presented under the undisputed facts is whether the hallway contained a defect that caused Mr. King’s fall. As the movants on the motion for summary judgment, the defendants pointed out that Mr. King would be unable to prove that a defect existed. See La. C.C.P. art. 966(C)(2). Thus, Mr. King had to show more than a mere hazard was presented by the wet floor, but that the wet-floor or rug could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances or that the wet floor and/or rug were unreasonably dangerous. See Heflin, 41,073 at p. 9, 936 So.2d at 232.
Mr. King’s own testimony ■ supports • a finding that the wet floor and/or rug did not present a dangerous condition expected to cause injury'to a prudent person | tnusing ordinary care or an unreasonable risk of harm. Mr. King testified that the floor was wet both before and after he left the building on the evening of the accident. Hence, the only change ;in the scenario was that when Mr. King re-entered the build.ing, he had just returned from walking outside where it was, as he. described, “pretty wet.” Yet, he admitted, that, he may not have wiped, his feet on the rug, which he stated was there for that precise purpose. Even Ms. Tate, who testified that she “almost fell” herself that day, stated that the incident occurred as she entered the building after walking through a puddle of water outside. She could not recall whether a mat was at the inside entrance-to the doorway on the date of the accident.
In this case, not only does the evidence offered by the defendants, but Mr. King’s own evidence establishes , that no prior accidents had occurred in the area where he fell. Although Mr. King opined that the wet floor and the rug presented a hazard, there was no expert testimony nor other *842 evidence presented to establish that the rug or the design and maintenance of the entranceway violated any safety regulations or ordinances. See Thompson, 04-2366 at p. 7, 927 So.2d at 355; Heflin, 41,073 at p. 9, 936 So.2d at 232 and compare Choyce v. Sisters of Incarnate Word, 25,958, p. 5 (La.App.2d Cir.8/19/94), 642 So.2d 287, 290, writ denied, 94-2510 (La.12/9/94), 647 So.2d 1119; Without such evidence, we find that Mr. King failed to produce factual support sufficient-to establish that he would be .able to satisfy his evidentiary, burden of proof at trial, and in the absence of such proof, La. C.C.P. art. 966(C)(2) expressly provides that there is no genuine issue of material fact. ,
CONCLUSION
Based on our de novo review of the evidence presented in the record before us, we find that Mr. King failed to present factual support sufficient to establish Inthat he will be able to satisfy his eviden-tiary burden of proof at trial. Accordingly, we affirm. All costs of this appeal are cast- to the appellant, James King.
AFFIRMED.

. Additional defendants were also named in Mr. King’s original and supplemental petitions, but he later filed a motion for the voluntary dismissal of those" additional defendants without prejudice, which the trial court granted in an order signed January 3, 2014.

. In his petition, Mr. King incorrectly refers to La. C.C. arts. 2396 and 2397.

. In making this pronouncement, the cited cases referred to La. C.C, art. 2695. Effective January 1, 2005, Title IX, “Of Lease,” of Book III of the Civil Code was revised by 2004 La. Acts, No. 821. Former La. C.C. art. 2695, which is a partial squrce for the present La. C.C. arts. 2696 and 2697, provided:
The lessor guarantees the lessee against all the vices and; defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even ‘if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound.to indemnify him for the same.
See Thompson, 04-2366 at p. 3 n. 2, 927 So.2d at 353 n. 2.

. In their brief, the defendants point out that for the purposes of the motion for summary judgment only, they agreed to assume the ■floor was wet as Mr. King alleged, although for trial purposes, the defendants dispute that the floor where Mr. King fell was wet at the time of his accident.