Judge Regina Bartholomew Woods
Appellant, New Orleans Private Patrol Services, Inc. ("NOPP"), appeals a June 16, 2017 judgment rendered by the First City Court for the Parish of Orleans ("trial court"), which granted summary judgment in favor of Appellee, Corporate Connections, Inc. ("CCI"). For the reasons that follow, we reverse the trial court's ruling and remand for further proceedings.
FACTUAL AND PROCEDURAL HISTORY
NOPP, in need of a sales manager, entered into a contractual agreement with CCI on January 19, 2016, to provide "recruitment and staffing services" to fill the position. CCI asserted that it "would select and screen job candidates and submit those candidates to NOPP for positions that NOPP was [sic] seeking to fill." According to NOPP, the contractual agreement had two (2) components. First, CCI was responsible for recruiting and recommending candidates to NOPP. NOPP asserts that although CCI's services were not specified in writing, NOPP "understood" that CCI was to "pre-screen[ ] potential candidates to determine their qualifications, and [conduct] a personal interview ... to determine the candidate's skill level and suitability." Second, CCI's written "90 Day Replacement Guarantee Only" provision stated that "should the placed employee be let go or choose to leave the client company's employ within ninety (90) days, [CCI] will replace the employee at no additional cost" to NOPP. In compensation for its services, CCI was to receive ten percent *482 (10%) of the placed-employee's first year salary.
On February 15, 2016, CCI presented Mr. Sean Donelon ("Mr. Donelon") to NOPP in consideration for the sales manager position. According to CCI, they selected Mr. Donelon as a candidate and prepared to perform a background check. While his background check was pending, NOPP interviewed Mr. Donelon twice and ultimately hired him-ten days before the background and reference checks were completed.[1] According to NOPP, it hired Mr. Donelon, unaware of the fact that the background and reference checks were incomplete. However, CCI disputed this claim and asserted that NOPP was fully aware of the incomplete background and reference checks when it interviewed and ultimately hired Mr. Donelon.
NOPP asserted that CCI first requested Mr. Donelon's references on February 29, 2016, three (3) days after NOPP offered him the position. According to NOPP, CCI completed Mr. Donelon's reference check on March 2, 2016, and received the results of his criminal background check on March 3, 2016. CCI reported that its review showed no criminal record, no issues with his Social Security history, and no involvement in civil lawsuits. CCI asserted that it searched on both Facebook and Google, which produced no challenges to Mr. Donelon's "professional ability or background." CCI further asserted that it contacted the professional references who were provided by Mr. Donelon; all three (3) gave "favorable recommendation[s]." As a result of the aforementioned, CCI generated an invoice for its services, dated March 7, 2016; accordingly, NOPP timely remitted payment to CCI in the amount of $3,600.00, which was the amount invoiced.
On March 7, 2016, Mr. Donelon began working at NOPP and, according to NOPP, he began displaying "strange behavior." In an affidavit, NOPP's secretary-treasurer, Karen Lorenz ("Lorenz"), stated that Mr. Donelon inquired about obtaining a gun, which is never provided to sales managers. Lorenz further stated that she observed "visible signs that Donelon was impaired while working." As a result, Lorenz recommended that he be terminated from his employment with NOPP.
In addition to Lorenz, Marie Stroud ("Stroud"), NOPP's executive assistant, stated in an affidavit that she observed Mr. Donelon's unusual behavior which "included constant pacing, 'blanking out,' and attending staffing meetings while visibly impaired." Subsequent to Mr. Donelon's termination on May 12, 2016, NOPP discovered handcuffs and a badge in his desk; NOPP suggested that Mr. Donelon retrieved these items from the supply closet without permission, because NOPP never supplied him with these items. Lorenz discovered that Mr. Donelon had sent text messages from his company cellular phone to his girlfriend claiming that he had responded to a shooting as part of his duties at NOPP, which was untrue. Lorenz also discovered that he had used NOPP's computers to search for and purchase pills online. NOPP asserted that Stroud discovered straws inside Mr. Donelon's desk, which had been "cut and contained powered drug residue."[2]
Further, Stroud searched Mr. Donelon's LinkedIn and Facebook profiles, and discovered that the professional references *483 he had provided to CCI were his friends who no longer worked at the same companies where they were employed along with Mr. Donelon or had not been his supervisors.
On May 12, 2016, NOPP notified CCI that NOPP had terminated Mr. Donelon's employment and sought to enforce CCI's "90-Day Replacement Guarantee."[3] CCI presented NOPP with a candidate, whom NOPP rejected. After an email exchange between NOPP and CCI regarding Mr. Donelon's placement and termination, CCI terminated its contractual agreement with NOPP. CCI offered to refund NOPP 75% of its fee.[4] Dissatisfied with the lack of a replacement candidate and wanting a complete refund, NOPP filed a petition for damages against CCI for breach of contract, in which NOPP claimed that CCI breached its contractual obligation by "failing to adequately screen Mr. Donelon and verify his background and references." CCI contended that Mr. Donelon's behavior during his employment with NOPP and his lack of suitability is not related to CCI's obligations under its contract with NOPP.
Ultimately, CCI filed for and was granted summary judgment, which dismissed, with prejudice, the petition of NOPP.
DISCUSSION
NOPP asserts that the trial court erred in granting CCI's motion for summary judgment because genuine issues of material fact exist as to whether CCI breached its contract with NOPP. Specifically, NOPP asserts that a breach of contract occurred between the two parties when CCI failed to adequately screen and investigate Mr. Donelon, as well as failed to make a reasonable attempt to find and to provide a replacement employee to NOPP after Mr. Donelon's departure.
Standard of Review
In Alexander v. Hancock Bank , this Court enunciated the standard for reviewing a trial court's decision regarding a motion for summary judgment pursuant to the 2016 amendment to La. C.C.P. art. 966, as follows:
An appellate court conducts a de novo review, applying the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Brown v. Amar Oil Co. , 2011-1631, p. 2 (La. App. 1 Cir. 11/8/12), 110 So.3d 1089, 1090 (citing Sanders v. Ashland Oil, Inc. , 96-1751, p. 6 (La. App. 1 Cir. 6/20/97), 696 So.2d 1031, 1035 ). A motion for summary judgment should only be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Collins v. Randall, 2002-0209, p. 3 (La. App. 1 Cir. 12/20/02), 836 So.2d 352, 354. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. King v. Allen Court Apartments II , 2015-0858, p. 3 (La. App. 1 Cir. 12/23/15), 185 So.3d 835, 837, writ denied , 2016-0148 (La. 3/14/16), 189 So.3d 1069. This procedure is favored and shall be construed to accomplish these ends. Id. ; see also La. C.C.P. art. 966 A(2).
The initial burden of proof rests on the moving party. La. C.C.P. art. 966 D(1). However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary
judgment, the *484 mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather, to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. King , 2015-0858 at p. 3, 185 So.3d at 838. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id. It is only after the motion has been made and properly supported that the burden shifts to the non-moving party. Brown , 2011-1631 at p. 3, 110 So.3d at 1090-91 ; Pugh v. St. Tammany Parish School Bd. , 2007-1856, p. 3 (La. App. 1 Cir. 8/21/08), 994 So.2d 95, 98.
A genuine issue is a triable issue. Brown , 2011-1631, p. 3, 110 So.3d at 1090-91. Jones v. Stewart , 2016-0329, p. 7 (La. App. 4 Cir. 10/5/16), 203 So.3d 384, 389, writs denied , 2016-1962, 20161967 (La. 12/16/16), 211 So.3d 1169. More precisely, an issue is genuine if reasonable persons could disagree. Id. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Id. A fact is material when its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Id. Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Id. ; King v. Illinois Nat. Ins. Co. , 08-149, p. 6 (La. 4/3/09), 9 So.3d 780, 784. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of substantive law applicable to the case. Brown , 2011-1631 at p. 3, 110 So.3d at 1091 ; Hall v. Our Lady of the Lake R.M.C. , 2006-1425, p. 9 (La. App. 1 Cir. 6/20/07), 968 So.2d 179, 185.
In order to determine whether the trial court's grant of summary judgment was proper, this court must look to the applicable substantive law.
Alexander v. Hancock Bank , 2016-0662, pp. 2-4 (La. App. 4 Cir. 2/8/17), 212 So.3d 713, 715-16.
To determine whether the trial court erred in granting summary judgment in favor of CCI, this Court must examine the underlying substantive law. Here, NOPP argued that CCI breached its contractual obligation to NOPP based on three (3) different failures, to wit: failing to adequately screen and investigate Mr. Donelon before presenting him to NOPP as a suitable candidate; failing to provide a replacement employee at no additional cost to NOPP pursuant to the "90-Day Replacement Guarantee Only" provision; and failing to make a reasonable attempt to provide a replacement employee pursuant to the "90-Day Replacement Guarantee Only" provision.
This Court has stated that "[t]he essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." Favrot v. Favrot , 2010-0986, pp. 14-15 (La. App. 4 Cir. 2/9/11), 68 So.3d 1099, 1108-09 ; See 1436 Jackson Joint Venture v. World Constr. Co., Inc., 499 So.2d 426, 427 (La. App. 4th Cir.1986).
The first element of a breach of contract claim requires that the parties have a contractual relationship. Here, it is undisputed that NOPP and CCI entered into a "Direct Hire" recruitment contract on January 19, 2016.
*485 The second element of a breach of contract claim is triggered by a breach of contract or the obligor's failure to perform. Here, NOPP argued that CCI breached the contract when it failed to properly screen Mr. Donelon, failed to make a reasonable attempt at finding a suitable replacement employee and ultimately, failed to find a suitable replacement employee. All three of these breaches are genuine issues of material fact and all three are disputed by CCI. Both NOPP and CCI have presented evidence, i.e., affidavits and emails that controvert each other's assertions with regard to these breaches of the contract entered into between them.
The Louisiana Supreme Court has stated that "[a] genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." Hines v. Garrett , 2004-0806, p. 1 (La. 6/25/04), 876 So.2d 764, 765-66. The aforementioned genuine issues of material facts where NOPP and CCI vehemently disagree with one another's position and offer countervailing evidence to prove the facts alleged therein, preclude the granting of summary judgment.
The only way in which the trial court could have granted summary judgment, was if it had weighed the credibility of one witness or favored certain evidence over another, which is specifically disallowed in motions for summary judgment. The Louisiana Supreme Court has pronounced that "[a] trial judge cannot make credibility determinations on a motion for summary judgment." Hutchinson v. Knights of Columbus, Council No. 5747 , 2003-1533, p. 8 (La. 2/20/04), 866 So.2d 228, 234. This Court echoed the Supreme Court's sentiment in Williams v. Metro Home Health Care Agency, Inc. , 2002-0534, p. 3 (La. App. 4 Cir. 5/8/02), 817 So.2d 1224, 1227, and stated that "[m]aking an evaluation of credibility has no place in determining summary judgment; it is not the trial court's function on motion for summary judgment to determine or even inquire into the merits of the issues raised." Id. (citing Rapp v. City of New Orleans, 1995-1638 (La. App. 4 Cir. 9/18/96), 681 So.2d 433 ).
Because we find that the trial court improperly granted summary judgment based on the second element of the cause of action, when it improperly either made creditability determinations or improperly weighed evidence, we pretermit discussion of the third element for a breach of contract cause of action.
DECREE
For the aforementioned reasons, we reverse the trial court's grant of summary judgment in favor of CCI and remand for further proceedings.
REVERSED AND REMANDED
LOBRANO, J., CONCURS IN THE RESULT

According to NOPP, they offered Mr. Donelon the sales manager position with "details to be ironed out between NOPP and CCI/DLL."

NOPP alleged that Mr. Donelon had a substance abuse problem.

CCI asserted that NOPP terminated Mr. Donelon on May 16, 2016.

Ultimately, CCI did not return any money to NOPP.