STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CA 0342

ROCHEL LATIOLAIS

VERSUS

TERREBONNE PARISH CONSOLIDATED GOVERNMENT

Judgment Rendered: **NOV 2 0 2024**

* * * * * * *

On Appeal from the 32nd Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Trial Court Docket Number 189247, Div. "E"

Honorable Randall L. Bethancourt, Judge Presiding

* * * * * * *

Damon J. Baldone
Thomas E. Dunn
Jordan M. Gremillion
Houma, Louisiana

Counsel for Plaintiff/Appellant,
Rochel Latiolais


Michelle Lyons Neil
Neil D.W. Montgomery
Amanda L. Mustin
Houma, Louisiana

Counsel for Defendant/Appellee,
Terrebonne Parish Consolidated
Government

* * * * * * *

**BEFORE: GUIDRY, C.J., PENZATO AND STROMBERG, JJ.**

Guidry, C.J. concurs and assigns reasons.

**PENZATO, J.**

Plaintiff, Rochel Latiolais, appeals from a judgment granting a motion for summary judgment in favor of defendant, Terrebonne Parish Consolidated Government, dismissing Ms. Latiolais's suit with prejudice. After review, we affirm.

## FACTS AND PROCEDURAL HISTORY

Rochel Latiolais filed suit against Terrebonne Parish Consolidated Government in August 2020, alleging she sustained personal injuries in a trip and fall incident at the Terrebonne Parish Library on Liberty Drive in Houma, Louisiana. According to the petition, Ms. Latiolais visited the library on August 23, 2019, discovered the door was locked, and began to walk away from the building when she "fell on the walkway where it dropped suddenly causing her to lose [her] balance and fall face first."

In September 2023, the Parish filed a motion for summary judgment, asserting Ms. Latiolais could not establish two essential elements of her burden of proof under La. R.S. 9:2800 – that the defect in the walkway in front of the library presented an unreasonable risk of harm and causation. The Parish asserted Ms. Latiolais was not certain of the exact location of her fall, and she did not look around to see what may have caused her fall.[1] The Parish relied on Ms. Latiolais's deposition, portions of which were attached to the motion. Ms. Latiolais testified she was walking back to her truck, and "it just felt like [she] stepped off a cliff. It's like [she] stepped and there was just air." Ms. Latiolais confirmed she did not trip or slip. After she fell, she did not notice anything other than cement.

---

[1] The Parish's summary judgment evidence included Ms. Latiolais's certified medical record, which reflects that Ms. Latiolais reported she slipped on a rock. However, the Parish did not contend or seek to establish Ms. Latiolais slipped on a rock. During her deposition, Ms. Latiolais testified the medical record was inaccurate. Since it is undisputed that Ms. Latiolais did not slip on a rock, we find this does not create a genuine issue of material fact concerning what caused Ms. Latiolais's fall.

2

Ms. Latiolais described the general area where she fell as concrete with squares, which reminded her of "individual black tiles, like for decoration." Ms. Latiolais testified there were "a couple of them that were empty, that were dug out," and she was unsure "which one" caused her fall. Photographs attached to Ms. Latiolais's deposition, which she identified and discussed, are grainy and of poor quality but, nevertheless, show what appears to be a path made of brick-sized and shaped pavers with square-shaped cut-outs at consistent intervals to form a decorative pattern. The nature of the material within the cut-outs is unclear; however, Ms. Latiolais referred to it as "pebbles." The square cut-out areas are darker than the surrounding pavers.



In support of its motion, the Parish also filed the affidavit of claims adjuster, Jovanna Pillot, who inspected the library premises after Ms. Latiolais reported her fall. Ms. Pillot attested the "decorative square pavers" (the cut-outs) had depths ranging from one half to one-and-one-half inches, and the "deepest ledge" was "immediately recognizable, even from a distance…, as having a surface slightly lower than the surrounding area." As a claims adjuster with the Parish's Risk Management Department, Ms. Pillot's responsibilities include investigating reports of injury. Ms. Pillot confirmed in her affidavit the area in question is a "high traffic area" located within feet of the library's front entrance. Ms. Pillot further attested

that, prior to Ms. Latiolais's fall, she had not received any reports or complaints of injury arising from trips, slips, or falls in the area between the doors and the parking lot of the library.

Ms. Latiolais opposed the Parish's motion, eventually filing three oppositions.[2] In her first opposition, Ms. Latiolais asserted the Parish had actual or constructive knowledge the "fill" material in the square cut-outs was "completely depleted." The first hearing on the Parish's motion took place in October 2023. The judgment granting the motion states that Ms. Latiolais's counsel "was not able to attend the hearing at the last minute." Ms. Latiolais filed a "motion for rehearing" requesting the trial court to schedule a rehearing on the Parish's motion for summary judgment. As requested, the trial court issued an order setting the Parish's motion for rehearing, first to December 8, 2023, then to January 26, 2024.[3]

On November 27 and December 14, 2023, the trial court granted Ms. Latiolais's motions to supplement her opposition to the Parish's motion for summary judgment. In these oppositions, Ms. Latiolais again focused on the Parish's alleged knowledge of the condition of the walkway, relying on Parish emails from May 2019 and January 2020.[4] Ms. Latiolais further asserted that her statement contained in the accident report shows she knew where she fell, contrary to the Parish's argument. Ms. Latiolais filed the Parish's responses to interrogatories and requests for

---

[2] In her first opposition, Ms. Latiolais asserted she sent discovery requests to the Parish in February 2021, but the Parish objected to her requests and refused to produce certain documents, including statements and an accident report. Ms. Latiolais did not file a motion to compel the Parish's discovery responses until October 3, 2023.

[3] By resetting the hearing on the Parish's motion, the trial court granted, *ex parte*, Ms. Latiolais's motion for rehearing. A motion for rehearing is treated as a motion for new trial. See *Landry v. Usie*, 2017-839 (La. App. 3d Cir. 10/18/17), 229 So.3d 1012, 1014; *Truitt v. Graco, Inc.*, 19-121 (La. App. 5th Cir. 11/20/19), 284 So.3d 674, 677 n.3. Therefore, the granting of Ms. Latiolais's motion for rehearing set aside the original judgment granting the Parish's motion for summary judgment. See *T.A. v. R.S.*, 2022-0847 (La. App. 1st Cir. 11/7/22) 2022 WL 16735125, *2 (unpublished).

[4] It appears the Parish supplemented its prior discovery responses, to Ms. Latiolais's satisfaction, prior to the scheduled hearing. Thus, the parties' discovery issues were resolved by the time Ms. Latiolais filed the second supplemental opposition. Ms. Latiolais did not file a motion to continue the January 26, 2024 hearing or file an affidavit pursuant to La. C.C.P. art. 967(C).

production of documents, as well as several unverified, uncertified documents, in opposition to the Parish's motion.

In its reply, the Parish objected to most of the exhibits attached to Ms. Latiolais's oppositions, namely: the Parish's responses to Ms. Latiolais's requests for production; an unverified copy of the "Initial Claim Set up Form"; an unverified copy of the "Public Accident Report; an unverified copy of "Recorded Interview for All Other Accidents" form; unverified letters between Ms. Latiolais's counsel and the Parish, with attachments; the Parish's privilege log; unverified library circulation records; and unverified emails, photos, and other documents concerning purported repairs to be made to the library premises. See La. C.C.P. art. 966(A)(4)(a) and (D)(2).

At the conclusion of the hearing on the Parish's motion, the trial court addressed the Parish's evidentiary objections by noting that La. C.C.P. art. 966 is "very specific," and a document that is not an affidavit, is not certified, and is not attached to a deposition is not permitted and has no evidentiary value. Without specifically stating on the record whether it sustained or overruled the objections, the trial court cited *May v. Carson*, 2021-1156 (La. App. 1st Cir. 8/2/22), 348 So.3d 88, 93, *writ denied*, 2022-01394 (La. 11/22/22), 350 So.3d 497, wherein this court found the trial court abused its discretion in overruling the defendant's objection to the plaintiff's unsworn, unverified summary judgment documents, stating, "In meeting the burden of proof, unsworn or unverified documents, such as letters or reports, annexed to motions for summary judgment are not self-proving and will not be considered; attaching such documents to a motion for summary judgment does not transform them into competent summary judgment evidence." The trial court then granted the Parish's motion, adopting the Parish's memorandum in support of

its motion as its reasons.[5] A judgment in accordance with this ruling was signed on February 8, 2024. Ms. Latiolais then filed this timely appeal.

## DISCUSSION

Ms. Latiolais asserts the trial court erred when it ruled that her exhibits were "not in conformity" with La. C.C.P. art. 966(A)(4)(a). On the merits, Ms. Latiolais asserts the trial court erred when it ruled she could not prove causation, and that "the defective area was open and obvious."

### *Summary Judgment Standard and Standard of Review*

The recent amendments to La. C.C.P. art. 966 became effective on August 1, 2023. See 2023 La. Acts, Nos. 317, § 1, and 368, § 1. Since the Parish's motion was filed in September 2023, we apply Article 966 as amended.

A ruling on a motion for summary judgment is reviewed under the *de novo* standard, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Corbajal v. Chris Owens French Quarter Parade, LLC*, 2024-00191 (La. 5/21/24), 385 So.3d 236, 237-8. The party moving for summary judgment is not required to negate all essential elements of the adverse party's claim, action, or defense; instead, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1).

When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of her pleadings, but her response, by affidavits or otherwise, must set forth specific facts showing there is a

---

[5] Although our review is *de novo*, we note this court cannot place any real value on the written reasons drafted entirely by counsel for one of the parties. *King v. Allen Court Apartments II*, 2015-0858 (La. App. 1st Cir. 12/23/15), 185 So.3d 835, 839, *writ denied*, 2016-0148 (La. 3/14/16), 189 So.3d 1069.

genuine issue for trial. La. C.C.P. art. 967(B); *Corbajal*, 385 So.3d at 238. Once a motion for summary judgment has been properly supported by the moving party, the non-moving party's failure to produce evidence of a material factual dispute mandates the granting of the motion. *Corbajal*, 385 So.3d at 238.

The applicable substantive law determines materiality, so whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Jefferson v. Nichols State University*, 2019-1137 (La. App. 1st Cir. 5/11/20), 311 So.3d 1083, 1085, *writ denied*, 2020-00779 (La. 11/4/20), 303 So.3d 623. Ms. Latiolais's claim against the Parish is governed by La. R.S. 9:2800.[6] To prove the Parish is liable for damages caused by a defective thing, Ms. Latiolais must establish: (1) the Parish had custody or ownership of the defective thing; (2) the defect created an unreasonable risk of harm; (3) the Parish had actual or constructive notice of the defect; (4) the Parish failed to take corrective action within a reasonable time; and (5) causation. See La. R.S. 9:2800; La. C.C. arts. 2317 and 2317.1; *Jefferson*, 311 So.3d at 1085. Failure to meet any one of these statutory requirements will defeat a claim against the Parish. See *Jefferson*, 311 So.3d at 1085.

In its motion, the Parish asserted Ms. Latiolais could not satisfy elements two and five of her burden of proof, *i.e.*, that an alleged defect on its premises created an unreasonable risk of harm and caused Ms. Latiolais's fall. Therefore, Ms. Latiolais's focus on the Parish's purported knowledge of the condition of the cut-outs (element three of her burden of proof) is misplaced.

***Evidentiary Issues***

Louisiana Code of Civil Procedure article 966(D)(2) states, when an evidentiary objection is made, the court "shall specifically state on the record or in writing whether the court sustains or overrules the objections raised." Although the

---

[6] The Parish is a public entity pursuant to La. R.S. 9:2800(G)(1).

trial court did not expressly sustain or overrule the Parish's objections, we find the court's comments regarding the specificity requirements of La. C.C.P. art. 966 and its citation to *May*, 348 So.3d 88 establish the trial court sustained the Parish's objections. We review this ruling under the abuse of discretion standard. See *May*, 348 So.3d at 93.

The only documents that may be filed or referenced in support of or in opposition to a motion for judgment are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, certified copies of public documents or public records, certified copies of insurance policies, authentic acts, private acts duly acknowledged, promissory notes and assignments thereof, written stipulations, and admissions. La. C.C.P. art. 966(A)(4)(a). This is an exclusive list. La. C.C.P. art. 966, Official Comments – 2023, Comment (a).

After reviewing the evidence submitted by Ms. Latiolais, we agree with the trial court that Ms. Latiolais's evidence, to which the Parish objected, is not proper summary judgment evidence. The documents at issue are unsworn and unverified and cannot be considered. See *Lucas v. Maison Ins. Co.*, 2021-1401 (La. App. 1st Cir. 12/22/22), 358 So.3d 76, 89. We find no merit in Ms. Latiolais's argument that documents, like the accident report, should be considered, because they were referenced in the Parish's interrogatory responses. A document that is not within the exclusive list set forth in La. C.C.P. art. 966(A)(4)(a) does not become proper summary judgment evidence by being referenced in an interrogatory response or by being produced in discovery. Instead, such documents are allowed to be filed if they are properly authenticated by an affidavit or deposition to which they are attached. *Lucas*, 358 So.3d at 90; see La. C.C.P. art. 966, Official Comments – 2015, Comment (c).

We likewise find no merit in Ms. Latiolais's argument that the "Public Accident Report" is a public record because the Parish, a public entity, labeled the

document "public" or because its counsel purportedly certified the document by "certifying" her client's discovery responses. Pursuant to La. C.C.P. art. 1420, an attorney's signature on her client's discovery responses constitutes a certification that she read the request, response, or objection and to the best of her knowledge, information, and belief formed after reasonable inquiry the request, response, or objection is (1) consistent with the rules of discovery and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, (2) not interposed for any improper purpose, and (3) not unreasonable, unduly burdensome, or expensive. Counsel's signature on her client's discovery responses does not transform an uncertified document into a certified public record in accordance with La. C.E. art. 901(7).

Therefore, we consider only those documents filed by Ms. Latiolais in opposition to the Parish's motion that fall within the exclusive list set forth in La. C.C.P. art. 966(A)(4)(a), specifically: the Parish's July 15, 2021, April 13, 2022, and October 6, 2023 interrogatory responses.

### *Unreasonably Dangerous Condition*

Although Ms. Latiolais asserts the trial court concluded the complained of condition was open and obvious, the Parish moved for a determination that the condition did not present an unreasonable risk of harm. The open and obvious nature of a condition is just one of several considerations within the risk/utility balancing test discussed by the Parish and used by Louisiana courts to determine whether a condition is unreasonably dangerous. See *Farrell v. Circle K Stores, Inc.*, 2022-00849 (La. 3/17/23), 359 So.3d 467, 474; and *Chambers v. Village of Moreauville*, 2011-898 (La. 1/24/12), 85 So.3d 593, 597-8 (applying the risk/utility balancing test to a cause of action based on La. R.S. 9:2800). The risk/utility balancing test considers four pertinent factors: (1) the utility of the complained of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness

9

of the condition (whether it is open and obvious); (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. *Farrell*, 359 So.3d at 474. Summary judgment based on the absence of liability may be granted upon a finding that reasonable minds could only agree the condition was not unreasonably dangerous. See *Farrell*, 359 So.3d at 478 (holding that whether a condition presented an unreasonable risk of harm falls within the breach element of the duty/risk analysis; summary judgment on the issue of breach may be appropriate, although breach involves a mixed question of law and fact).

Ms. Latiolais testified she was unsure "which one" of the square cut-outs caused her fall. Without ruling on whether this is sufficient to create a genuine issue of material fact as to causation, we find the evidence demonstrates Ms. Latiolais will be unable to satisfy her burden of proving that an alleged defect on the Parish's premises created an unreasonable risk of harm.

*Utility of the Complained of Condition*

If the condition at issue was "meant to be there," it often will have social utility and will weigh against a finding that the premises was unsafe. *Farrell*, 359 So.3d at 474. Here, Ms. Latiolais testified the square cut-outs appeared to be decorative. Ms. Pillot referred to them as "decorative square pavers" in her affidavit. Finally, the photographs confirm the cut-outs were an intentional part of the aesthetic pattern of the walkway.

*Likelihood and Magnitude of the Harm, including the Obviousness and Apparentness of the Condition*

The next factor considers the degree to which the condition will likely cause harm. A finding that the condition is likely to cause harm weighs in favor of finding it is unreasonably dangerous. The converse is also true. The magnitude of the harm factor considers whether the condition presents a risk of great or small injury and the

likelihood of each. This factor includes a consideration of the open and obvious nature of the condition. For a hazard to be considered open and obvious, it must be one that is open and obvious to all who may encounter it. The open and obvious concept asks whether the complained of condition would be apparent to any reasonable person who might encounter it. If so, the reasonable person would avoid it, and the factor will weigh in favor of finding the condition not unreasonably dangerous. *Farrell*, 359 So.3d at 478.

We cannot determine the precise color difference between the cut-outs and the surrounding surface from the Parish's black and white photos. However, as seen in the images below, there is some color and/or textural difference between the brick-shaped pavers and the cut-outs, which are filled with a material different from the surrounding pavers.



The cut-out square areas are visibly distinct and readily apparent to all who encounter the walkway. See *Bertrand v. Jefferson Arms Apartments, LLC*, 2022-1195 (La. App. 1st Cir. 4/14/23), 366 So.3d 595, 604. Ms. Latiolais offered no evidence to refute Ms. Pillot's observation that the cut-out with the "deepest ledge" was "immediately recognizable."

The photos also show the path is clear and free from obstructions that would have prevented Ms. Latiolais from seeing the cut-outs.



There is no allegation or evidence of an optical illusion or any other reason Ms. Latiolais was unable to see the square cut-outs. See *Williams v. Liberty Mutual Fire Ins. Co.*, 2016-0996 (La. App. 1st Cir. 3/13/17), 217 So.3d 421, 427, *writ denied*, 2017-0624 (La. 6/5/17), 219 So.3d 338. Ms. Latiolais likewise did not refute the Parish's evidence that no other falls were reported in this high traffic area.[7] Thus, we find the evidence weighs in favor of finding the condition was unlikely to cause harm or great injury.

*Cost of Preventing the Harm*

The record is void of any evidence concerning the cost of preventing the harm.[8] Therefore, we are unable to consider this factor in applying the risk/utility balancing test. See *Farrell*, 359 So.3d at 479.

---

[7] Additionally, the Parish denied having knowledge of any other claims involving the site of Ms. Latiolais's fall in its interrogatory responses filed by Ms. Latiolais in opposition to the motion for summary judgment.

[8] The Parish asserts we may take judicial notice of the miles of pavement, sidewalks, and lots it must maintain. Citing *Boyle v. Board of Supervisors, Louisiana State University*, 96-1158 (La. 1/14/97), 685 So.2d 1080, 1083 (noting the cost of repair is not simply the cost of repairing the single depression in LSU's sidewalk, but the cost of repairing all similar or worse defects existing in LSU's twenty-two or more miles of sidewalks). However, the condition at issue here was a decorative choice at a single library location and cannot be compared to pavement or sidewalks spanning throughout the Parish.

*Nature of Plaintiff's Activities*

The fourth and final factor of the risk/utility balancing test considers the nature of the plaintiff's activity in terms of social utility or whether the activities were dangerous by nature. In this case, Ms. Latiolais was walking from the library entrance back to her vehicle when she fell. While the social utility of a library visit may be important and is not dangerous in nature, it does not weigh heavily as a consideration in determining an unreasonably dangerous condition. See *Farrell*, 359 So.3d at 479; *Bertrand*, 366 So.3d at 605.

Thus, under the risk/utility balancing, the complained of condition on the Parish's premises was not unreasonably dangerous. The Parish satisfied its summary judgment burden of proving the absence of factual support for one or more elements of Ms. Latiolais's burden of proof. See La. R.S. 9:2800; La. C.C.P. art. 966(D)(1). The summary judgment burden then shifted to Ms. Latiolais. Nothing in the Parish's interrogatory responses, the only proper summary judgment evidence offered by Ms. Latiolais, creates a genuine issue of material fact on the issue of whether the condition of the walkway presented an unreasonable risk of harm or establishes the Parish is not entitled to summary judgment as a matter of law. See La. C.C.P. art. 966(D)(1). Consequently, the Parish's motion for summary judgment was properly granted.

**CONCLUSION**

For the foregoing reasons, we affirm the February 8, 2024 judgment granting the motion for summary judgment filed by Terrebonne Parish Consolidated Government and dismissing Rochel Latiolais's suit, with prejudice. All costs of this appeal are assessed against Rochel Latiolais.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CA 0342

ROCHEL LATIOLAIS

VERSUS

TERREBONNE PARISH CONSOLIDATED GOVERNMENT

**GUIDRY, C.J., concurs and assigns reasons.**

**GUIDRY, C.J., concurring.**

As the plaintiff failed to present suitable evidence establishing the exact location of the alleged defect she encountered, I agree summary judgment was properly granted in this case. Though the question of causation is usually an issue for the factfinder's determination, it is possible to determine this issue on summary judgment if reasonable minds could not differ. Bruno v. Blue Bayou Water Park, LLC, 23-0675, p. 8 (La. App. 1st Cir. 12/29/23), 381 So. 3d 802, 810.

Herein, the plaintiff's deposition testimony was the only *admissible* summary judgment evidence offered regarding the cause of the accident, and in her deposition, the plaintiff plainly confessed her lack of certainty regarding the exact location of her fall. On appeal, the plaintiff points out that her deposition was taken several years after her accident, but at trial, she asserts that one of the documents she attempted to submit in opposition to the motion for summary judgment[1] could be used to refresh her memory such that she could prove the element of causation. This assertion by the plaintiff is speculative at best. Unsupported speculation and mere argument of a possibility do not warrant a

---

[1] The trial court indicated the document was not proper summary judgment evidence. See La. C.C.P. art. 966(A)(4)(a) (listing the types of documents that can be filed or referenced in support or in opposition to a motion for summary judgment).

finding of a genuine issue of material fact. See Bruno, 23-0675 at p. 8, 381 So. 3d at 810.

Moreover, the Terrebonne Parish Consolidated Government presented evidence to establish that the deepest depression in the walkway was one-and-one-half inches, whereas the plaintiff submitted no countervailing evidence regarding any height deviations in the walkway. As a matter of law, it has been held that a pavement deviation of less than two inches does not pose an unreasonable risk of harm under the risk-utility balancing test. See e.g. Chambers v. Village of Moreauville, 11-898, p. 7 (La. 1/24/12), 85 So.3d 593, 598 (observing "Louisiana jurisprudence has consistently held that a one-and-one half inch deviation does not generally present an unreasonable risk of harm.").

As such, I concur in the result reached in this case.