86 So.2d 704 (1956)
J. Claud WELCH
v.
NEWPORT INDUSTRIES, Inc., et al.
No. 4143.
Court of Appeal of Louisiana, First Circuit.
March 20, 1956.
Rehearing Denied April 27, 1956.
Writ of Certiorari Denied June 11, 1956.
*706 Lawes, Cavanaugh, Hickman & Brame, Lake Charles, for appellant.
Carmouche, Martin & Wilson, Ernest G. LaFleur, Jr., Lake Charles, for appellees.
TATE, Judge.
This is a suit for workmen's compensation benefits. Appeal from a judgment based on an award for total and permanent disability is taken by co-defendants, the employer, and its compensation insurer.
The chief question is whether plaintiff Welch is entitled to protection of the Compensation Act, LSA-R.S., 23:1021 et seq. as either (a) an employee; or (b) an independent contractor doing substantial manual labor. Plaintiff contends he is an employee; defendants contend Welch was only an independent contractor, but deny that his duties included the performance of substantial manual labor.
In the following discussion, we are expressly not deciding whether Welch was or was not an employee by reason of Newport's alleged right to control his operations.
For we have determined that, even if Welch was only an independent contractor as contended by defendants, nevertheless Welch's employment is included within the protection of the Act under the italicized provisions below:
"(6) `Independent Contractor' means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter." LSA-R.S. 23:1021(6). (Italics ours.)
(The italicized clause was added by Act 179 of 1948.)
In this case of initial judicial interpretation of the clause in question, defendants' counsel most ably argues that an "independent contractor" is not entitled to the benefits of the Act unless: (a) a "substantial part", meaning a considerable or large portion, rather than merely some time; (b) was spent in the performance of "manual labor", meaning not simply use of his hands such as in driving a pickup truck, loading and unloading supplies, in the performance of duties primarily supervisory in nature, but use of his hands to perform strictly non-supervisory duties.
We cannot agree that the provisions of the Compensation Act, remedial in nature, should be so narrowly construed.
While in some legal senses "substantial" indeed has the signification of the larger part, such as in "substantial compliance", legally the words "substantial part" also are used not as a term of mathematical precision, but also so as to mean the converse of insubstantial or immaterial.
As was stated in a federal case interpreting the words "substantial part" in connection with the interpretation of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., a remedial statute with similar legislative intention and judicial interpretation,
"`A substantial part' is not a phrase of mathematical precision. For the purposes under consideration, I think it is satisfied by less than 50 per cent. I do not think that in the context in which it is used by the Supreme Court, `substantial' means the same as when it is used in the phrase, `substantial performance of a contract.' I construe the language to mean the converse of insubstantial or immaterial. See, Schainman v. Dean, 9 Cir., 1928, 24 F.2d 475, 476. By such a standard, I find that a substantial part of the plaintiffs' *707 activities was in the production of goods for commerce", Berry v. 34 Irving Place Corporation, D.C., 52 F. Supp. 875, at page 879.
See to same effect, Frank v. McKeekan, D.C., 56 F.Supp. 369; see 40 Words and Phrases, Pocket Part, Verbo, Substantial Part.
Similarly, "supervisory duties" and "manual duties" are not necessarily contradictory terms for purposes of determining compensation coverage. "Supervisory duties" may include the performance of manual labor so as to entitle the individual employed in the performance thereof to the protection of our Compensation Act. It may technically be "supervisory" to truck supplies or to aid in loading logs, or to unbog machinery, or maintain machinery in operation, all with the use of one's own hands, but the true legal meaning of the term "manual labor" is to denote work in which the physical element predominates over the mental, see 26 Words and Phrases, Verbo Manual Labor, p. 603. For purposes of determining compensation coverage, the distinguishing feature is whether the workingman participates physically himself, rather thanso to speakaloofly directs in clean Sunday clothes.
Further, earlier jurisprudence interpreting the initial definition of an "Independent Contractor" as one who renders service, "other than manual labor," see above LSA-R.S. 23:1021(6), held that one who furnished manual labor to another was not deprived of the protection of the Act because he also furnished equipment, supplies, supervisory services, etc., see Nesmith v. Reich Bros., 203 La. 928, 14 So.2d 767; Allgood v. Loeb, La.App., 22 So.2d 568, and cases therein cited.
Newport admits that at least one day a week, Welch drove his pickup truck on the two-hour (one way) trip from Oakdale (Newport's site) to Jasper, Texas (site of job) transporting supplies, which Welch loaded into his own truck with his own hands at Oakdale and unloaded on arrival back at Jasper, Texas; that he drove his pick-up truck, transporting supplies to crews, daily; that he built the supply shed with his own hands; that at least occasionally he helped load the railroad cars, maintain and repair machinery, wield an ax, shovel, or wheelbarrow, or drive a tractor. And in fact, there is no question but that Welch was injured when he with one helper, each using with their own hands the appropriate tools, dug a ditch, cut logs, and shoved with logs and at logs to unbog a stuck tractor. The District Court specifically found "plaintiff did manual labor on the job", (Tr-353.)
In urging their more restrictive construction of the statutory provision, defendants rely factually on the argument that Welch was responsible for the operation of several trucks and pieces of equipment and approximately thirty men, and therefore could not spend much time in what it argues is "manual labor".
The testimony of several of defendant's "contractors" was taken and was in general that in the performance of their contracts no appreciable manual labor was involved. However, at least one of these "contractors" called by defendants and a former "contractor" testifying on behalf of plaintiff, estimated that 50% of the time spent in performance of duties was spent in the performance of manual labor. The other "contractors" further admitted that they were not personally familiar with the operations by Welch in the specific performance of Welch's duties under his contract.
The testimony of plaintiff himself is exceedingly strong and detailed as to the various acts of manual labor that he regularly performed, and as aforesaid it is corroborated by two other of Newport's present or former "contractors" and by a number of the members of Welch's former crew.
For instance, aside from his duties in the transport and unloading of supplies, Welch testified he averaged about 5 hours per day at the loading ramp at the railroad tracks (where he had built with his own hands the supply shed), where he personally *708 hooked and unhooked the net to unload the various trucks of his crew as they drove up with stumps for shipping, and where as ground-man he picked up the loose stumps and wood which fell periodically to the ground from the net in the process of transfer from the trucks to the railroad car. Welch also with shovel and wheelbarrow often re-shaped the ballast and dirt ramp after the trucks disarranged it.
While perhaps it seems unusual at first that a "contractor" grossing ten to twelve thousand dollars a month, with 30 men working under him, had the time to perform much manual labor, the testimony when considered witness by witness preponderates to the effect that Welch regularly and recurrently performed a substantial amount of manual labor. Further, it is also uncontradicted in the record that out of this large gross earning, Welch only realized a net earnings of $75-90 per week, or slightly in excess of Newport's written guarantee of "weekly earnings in excess of $55.00". (P-2.)
Defendants further urge factually that Welch performed his contract for approximately six months following the accident, despite the alleged disability; therefore could not have much manual labor to perform or could not be disabled from its performance. However, Welch produced evidence that as the painfulness increased following the initial injury, the heavier portion of his duties were performed by another member of his crew, or when performed by Welch himself, then only with pain and suffering.
We do not believe there is an appreciable dispute concerning plaintiff's medical and legal disability. He sustained a ruptured intervertebral disc in the accident of March 2, 1953, which disc was surgically removed on September 1, 1953. Due to the residual effects of the initial injury and the consequent surgery, Welch cannot perform or cannot perform without pain some of the substantial duties of occupations similar to that in which engaged at the time of the accident. He is therefore totally disabled within the meaning of our Compensation Act, Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695; Estilette v. United States Fidelity and Casualty Co., La.App. 1 Cir., 64 So.2d 878; Fruge v. Pacific Employers Insurance Co., La.App. 1 Cir., 71 So.2d 625, affirmed as to other grounds 226 La. 530, 76 So.2d 719; Strother v. Standard Accident Ins. Co., La. App. 1 Cir., 63 So.2d 484; Fontenot v. Goldenstern Pipe & Supply Co., La.App. 1 Cir., 50 So.2d 484; Scott v. Fulton Bag & Cotton Mills, La.App., 65 So.2d 397.
Plaintiff-appellee has answered the appeal requesting the award of penalties and attorney's fees under LSA-R.S. 22:658 for the arbitrary and capricious failure to pay compensation to an injured workman without probable cause. Although we have resolved the factual and legal issues against defendants herein, the failure to pay compensation herein seems to have been based upon bona fide and substantial factual and legal contentions, so as not to require assessment of penalties herein.
Plaintiff-appellee further requests by answer to the appeal that we amend the decree to permit plaintiff to reopen these proceedings below to recover additional reasonable medical expenses, insofar as within the statutory allowance, should defendant refuse to provide same; and while we doubt in view of the clear legal liability for same that such relief is necessary, such amendment is accordingly granted; and for the above and foregoing reasons, the judgment of the District Court herein is affirmed; all costs to be paid by defendants-appellants.
Affirmed.
LOTTINGER, Judge (dissenting).
It has been held that the test of what constitutes independent service lies in the control exercised, the decisive question being as to who has the right to direct what shall be done and when and how it shall be done. See Durant v. Industrial Lumber Co., La. App., 6 So.2d 164.
*709 The record shows that the company had no control over the operations of the petitioner except as to the results. Of course he was told what areas in which to cut the stumps. This was for the protection of both petitioner and defendant so as to assure that petitioner's employees would not trespass upon third parties properties. As to the clearing off of the property after the stumping operations, and the specifications as to the size of wood to be delivered, these were mere factors as to the result of the work, and cannot be considered as control. The same is true as to the act of petitioner in picking up pieces of wood from the railroad tracks. Newport did not direct the petitioner how to run his operations, all it was interested in was the results of the work. It did make suggestions from time to time, such as to how the railroad cars should be loaded for maximum efficiency, however, it did not direct that the cars must be loaded in any particular method.
The record shows that petitioner had the right to hire and fire his own employees, and that the employees were under the control of petitioner and were paid by him. Petitioner owned his own equipment, purchased his own supplies, and was in full and complete charge of the work. He was not carried on the payroll of Newport, and the only interest Newport had in the operations of petitioner was as to results. As a matter of fact Welch's testimony is convincing that he was not an employee. He was asked, "Now, was there any actual supervision other than to see that you stayed on a particular tract that they may have owned stumps on and to see that the wood was of a particular size? A. That consists of the majority of the supervision." I am therefore, of the opinion that petitioner was an independent contractor, and certainly was not an employee of Newport.
The next question presented is whether petitioner was an independent contractor doing substantial manual labor so as to come within the provisions of subsection (6) quoted above. I have found no cases wherein this clause has been involved. In Webster's Universal Unabridged Dictionary under the word "substantial" I find the following definitions:
"1. Belonging to substance; real; actually existing.
"2. Real; solid; true; not seeming or imaginary.
"3. Corporeal; material.
"4. Having strong substance; strong; stout; solid; as, substantial cloth; a substantial fence or gate.
"5. Possessed of goods or estate; responsible; moderately wealthy; as, a substantial freeholder or farmer; a substantial citizen.
"6. Vital; important; as, they agree on all which is substantial.

"7. Of considerable size or amount; as, a substantial gift. (Italics ours.)
"8. In biology, pertaining to the tissue of any part or organ. Substantial damages; a sum awarded by a jury intended to cover the real damage, instead of a nominal sum."
Also in Black's Law Dictionary, Fourth Edition, under "substantial" I find as follows:
"Of real worth and importance; of considerable value; valuable."
"Something worth while as distinguished from something without value or merely nominal."
Also in Black's Law Dictionary under "Substantial Damages" I find the following:
"A sum, assessed by way of damages, which is worth having; opposed to nominal damages, which are assessed to satisfy a bare legal right. Considerable in amount and intended as a real compensation for a real injury."
However, it is apparent from the said statute and the above that at least a large part of the work time of an independent contractor's work must be manual labor so as to qualify under the act.
*710 I do not feel that petitioner has proved that a substantial or large part of his personal work was manual labor. True he did repair, or help repair, his own equipment which needed repairing on the job. This repair work, however, was not carried on every day but just once in a while and it only required a short period of time. I feel also that the building of the stock for storage of supplies was manual labor but the shack was built in the beginning of the contract which took plaintiff about one week to complete, working thereon intermittently with the help of others. Petitioner's act of picking up bits of wood from the railroad track would constitute a certain amount of manual labor but it was only done occasionally by petitioner. This and the running of strip lines might be considered as a part of his supervision and for his own benefit but still cannot be considered a substantial or large part of his work. Any encumbrance on the tracks would have delayed petitioner's shipments to the company for which he would have suffered monetary losses. Furthermore, the mere driving of his pickup truck to the company for supplies once a week cannot be considered substantial manual labor. Considering all of the manual labor performed by plaintiff, primarily and incidentally connected with his contract with Newport, I still cannot classify same as taking up a substantial or large part of plaintiff's work time in carrying out the terms of the contract.
Petitioner employed some thirty men and made some ten to twelve thousand dollars per month. I believe that it is apparent that the greatest part of his time was employed in the supervision of his men. All the other contractors of Newport who testified stated that they did very little manual labor if any. The record shows that the contract continued in operation until its completion, about six months after the accident, without the addition of any further laborers.
I feel that the record, as a whole, shows conclusively that petitioner was an independent contractor, and that he did not do a substantial amount of manual labor so as to come within the provisions of the Workmen's Compensation Act.
For the above and foregoing reasons I respectfully dissent from the majority.