238 So.2d 238 (1970)
Hilda VIZENA, Plaintiff-Appellant,
v.
TRAVELERS INSURANCE COMPANY et al., Defendants-Appellees.
No. 3155.
Court of Appeal of Louisiana, Third Circuit.
July 29, 1970.
Rehearing Denied August 26, 1970.
Writ Refused October 7, 1970.
*239 Guillory, Guillory & Guillory, by A. Frank McGee, Eunice, for plaintiff-appellant.
Dubuisson & Dubuisson, by James T. Guglielmo, Opelousas, for defendants-appellees.
Before TATE, HOOD and CULPEPPER, JJ.
HOOD, Judge.
This is an action for damages arising out of the accidental death of Sammy Vizena. The suit was instituted by Mrs. Hilda Vizena, as tutrix for two minor children of the decedent. The defendants are Chem-Gas Products Company and its liability insurer, Travelers Insurance Company. Judgment was rendered by the trial judge in favor of defendants, and plaintiffs have appealed.
A companion suit arising out of the same accident was instituted by four other children of the decedent. It was consolidated for trial with the instant suit, and judgment was rendered by the district court in that case, as in this one, rejecting plaintiffs' demands. The plaintiffs appealed, and we are rendering judgment in both of these cases on this date. See Jeanette V. Soileau et al. v. Travelers Insurance Company et al., La.App., 1970, 238 So.2d 242.
The principal question presented here is whether plaintiffs' right to recover for the death of Sammy Vizena is limited to the remedy provided by the Louisiana Workmen's Compensation Act, and thus whether plaintiffs are barred from maintaining this tort action. The trial judge concluded that plaintiffs' remedy was exclusively under the compensation law, and it was on that ground that judgment was rendered rejecting their demands in this suit.
The accident which resulted in the death of Sammy Vizena occurred at about 1:10 P.M. on February 19, 1969, at the plant site of Chem-Gas Products Company, in Evangeline Parish. Vizena was a welder by trade and by training. At the request of the manager and of the lease operator of Chem-Gas Products Company, he went to the plant yard of that company to repair a salt water tank which was leaking. There was a hole in the bottom of the tank, and Vizena was engaged to do the welding necessary to repair it.
He arrived at the plant site at about 10:30 A.M. on the above mentioned date, and upon his arrival the lease operator, Lloyd Ardoin, met him at the place where the salt water tank was located. They found that some water was still in the tank when they got there, and Vizena felt that the welding could not be performed until all of the water had drained out. He and Ardoin attempted to make an additional opening in the tank with a pipe wrench, but they were unable to do so. Ardoin then obtained a "collar" from some other part of the premises, and Vizena proceeded to weld that collar to the bottom of the tank and then to burn a hole in the tank from the inside of the collar. The remaining water then proceeded to flow out of the tank through this hole. It was noon by the time they completed the above mentioned operations, so Vizena and Ardoin left the premises at that time to get lunch.
They returned to the tank at about 1:10 P.M., by which time all of the water had drained out. Vizena started the motor of his welding equipment for the purpose of repairing the hole in the tank, and Ardoin began working on a pump located two or three feet from the decedent. Within a feet seconds after Vizena started the motor of his welding equipment, the salt water tank exploded with great force, killing Vizena almost instantly and injuring Ardoin.
The Chem-Gas plant, where this accident occurred, is an oil and gas refinery. Its business and operations were described by the production superintendent as follows: "We gas lift for a lot of people, we make oil production, we make gasoline, casing head gasoline, we also make LPG, and we *240 process both plants between Pine Prairie and Mamou. We cover wet gas and gas lift fifty somewhat wells for other companies in the Pine Prairie field." He stated that Vizena had done welding work for the plant on an average of once or twice a month before this date, that he billed the company for his work at the rate of $6.00 or $6.50 per hour, and that the company paid him the amounts shown on his invoices. No welders were employed regularly by Chem-Gas, but instead the company officials usually called Vizena to do their welding work for them. The production superintendent estimated that most of the jobs done by Vizena for that company took just a few hours to complete, but some of them required two or three days.
Just prior to and at the time of his death, Vizena maintained his own welding shop. He owned the welding equipment which he used, including a truck. He was not employed full-time by anyone, but instead he accepted welding jobs for various people from time to time, and he charged the persons who hired him a fixed amount per hour for the work he performed. Vizena had only one regular employee, Lionel Bordelon, who also was a welder. Bordelon testified that Vizena was a hard worker, that he regularly did the actual welding and performed practically all of the manual labor incidental thereto on all jobs that he undertook. He estimated that the decedent was engaged by Chem-Gas to do welding at the latter's plant on an average of 12 or 13 times per year.
When Vizena was engaged to perform this particular welding job, the company officials merely pointed out to him the tank which needed to be repaired. No representative or employee of Chem-Gas exercised any control or supervision over him, and they did not give him any directions as to how the work was to be performed. Vizena went to the plant site alone, intending to perform all of the welding and labor necessary to repair the tank. The company's lease operator, Ardoin, was present, but he was not a welder and he stated that he was there merely "to help him if he needed help."
The trial judge concluded that the welding performed by Vizena was an integral part of the business of Chem-Gas. He found that the decedent was an independent contractor who performed substantial manual labor, that his injury and death was compensable under the Louisiana Workmen's Compensation Act, and that plaintiffs thus are barred from recovery here.
The law is settled that in cases where an injured employee or his survivors are provided with rights or remedies under the Workmen's Compensation Act, the remedies so provided are exclusive. In such a case the employee or his survivors are precluded from recovering in tort from the employer or principal. LSA R.S. 23:1032; Meche v. Farmers Drier & Storage Company, 193 So.2d 807 (La.App. 3 Cir. 1967).
An independent contractor is not entitled to recover benefits under the compensation law from the owner or principal, unless a substantial part of his work time was spent in manual labor in carrying out the terms of the contract. LSA R.S. 23:1021(6); Welch v. Newport Industries, 86 So.2d 704 (La.App. 1 Cir. 1956); Sam v. DeVille Gin, Inc., 143 So.2d 838 (La.App. 3 Cir. 1962); Rashall v. Fallin & Savage Timber Company, 127 So.2d 238 (La.App. 3 Cir. 1961); Melancon v. Keller, 136 So. 2d 67 (La.App. 4 Cir. 1962).
With reference to the right of an independent contractor to claim compensation benefits, LSA R.S. 23:1021(6) provides:
"`Independent Contractor' means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this *241 Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter." (Emphasis added.)
We agree with the trial judge in the instant suit that Vizena was performing services as an independent contractor for Chem-Gas when the accident occurred. Plaintiffs contend, however, that the trial judge erred in holding that a substantial part of the decedent's work time was spent in manual labor in carrying out the terms of the contract. They take the position that he did not spend a substantial part of his work time in manual labor, that his survivors thus have no claim under the compensation act, and that they are entitled to maintain this tort action.
The evidence shows that Vizena was engaged to do the welding which was necessary to repair a hole in a salt water tank. He was the only welder who went to the place when the work was to be performed. He loaded and brought his own equipment, driving his own truck. He performed manual labor in attempting, unsuccessfully, to break a pipe union with a pipe wrench. He started the motor of his welding equipment each time it was necessary to do so, and he alone did all of the welding which was done in carrying out the terms of the contract, consisting of the welding of a collar to the tank and of burning a hole in the tank. The only other person who rendered any assistance to him was Ardoin, an employee of Chem-Gas. Ardoin was not a welder, and he did none of the welding or handling of the welding equipment. The evidence shows that he assisted Vizena in trying to break the pipe union, in going to another part of the premises to get the collar which Vizena welded to the tank, and he "chipped the weld and brushed it off for him."
Plaintiffs contend that Vizena, being a welder by trade, was a skilled craftsman. They point out that he had spent only one and one-half hours on this job before the accident occurred, that during that time he had done very little welding, and that Ardoin had performed many of the "menial tasks" connected with the welding operation. They argue that the burden of proof rests on defendants to establish the exclusiveness of the remedy provided by the Workmen's Compensation Act, and that defendants have failed to discharge that burden. We cannot agree with that argument.
In Welch v. Newport Industries, supra, it was held that the words "substantial part," as used in the above quoted section of the Workmen's Compensation Act, were not intended as a phrase of mathematical precision, but instead they indicate the converse of insubstantial or immaterial. We held in Rashall v. Fallin & Savage Timber Company, supra, that the plaintiff who assisted his two employees in cutting and hauling wood spent a "substantial part" of his work time in manual labor in carrying out the terms of the contract. The same conclusion was reached in Sam v. DeVille Gin, Inc., supra, and in Melancon v. Keller, supra, where similar issues were presented.
Our conclusion here is that a substantial part of Vizena's work time was spent in carrying out the terms of his contract with Chem-Gas.
The sole remaining question to be resolved is whether the welding which was being performed by Vizena at the time of the accident was an integral part of the business of Chem-Gas. The Workmen's Compensation Act would not be applicable, of course, unless the work being performed by the independent contractor, Vizena, was a part of the principal's trade, business or occupation. Meche v. Farmers Drier & Storage Company, supra; Doucet v. W. H.C., Inc., 212 So.2d 267 (La.App. 3 Cir. 1968).
In the Meche case we held that rodent control was an integral part of the business of operating a rice mill or warehouse. In Doucet, the repair of a salt water pump *242 was held to be a part of the trade, business or occupation of the defendant company which was engaged in the production of oil and gas. A welder who repaired a part of a drilling rig was held to be engaged in the business, trade or occupation of the principal, a drilling company. Massey v. Rowan Drilling Company, 368 F.2d 92 (C.A. 5 Cir. 1966). In Best v. J & B Drilling Company, 152 So.2d 119 (La.App. 3 Cir. 1963), we concluded that the repairing of an air compressor used on a drilling rig was an integral part of the business of a drilling company. And, in Stansbury v. Magnolia Petroleum Company, 91 So.2d 917 (La.App. 1 Cir. 1957), our brothers of the First Circuit Court of Appeal said, "We also know, as a fact, that any company owning oil derricks requires the services of welders for the maintenance and repair of their derricks." See also Castille v. Liberty Mutual Insurance Company, 356 F.2d 509 (C.A. 5 Cir. 1966); Doss v. American Ventures, Inc., 224 So.2d 470 (La.App. 4 Cir. 1969).
The evidence here shows that Chem-Gas required the services of welders frequently in operating and maintaining its refinery. After considering all of the evidence, we find, as did the trial judge, that the welding work being performed by Vizena at the time of the accident was an integral part of the trade, business or occupation of Chem-Gas.
Since plaintiffs are entitled to benefits provided by the Workmen's Compensation Act because of the death of Vizena, they are barred from recovering damages arising out of the same accident and death. We find no error in the judgment of the trial court rejecting plaintiff's demands.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.