NICHOLAS KNOX         *        NO. 2021-C-0419

VERSUS                 *

                           COURT OF APPEAL

ELITE PROTECTION         *
SOLUTIONS AND WILLIE'S         FOURTH CIRCUIT
CHICKEN SHACK, LLC        *

                           STATE OF LOUISIANA

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
THE OFFICE OF WORKERS' COMPENSATION
NO. 19-02552, DISTRICT "08"
HONORABLE Catrice Johnson-Reid, The Office of Workers' Compensation
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

Racheal Bellemin
DUDLEY DEBOSIER
1075 Government Street
Baton Rouge, LA 70802


         COUNSEL FOR PLAINTIFF/RESPONDENT

Philip J. Borne
Deandra N. De Napoli
CHRISTOVICH & KEARNEY, LLP
601 Poydras Street, Suite 2300
New Orleans, LA 70130


         COUNSEL FOR DEFENDANTS/RELATORS



         **WRIT GRANTED; JUDGMENT REVERSED;**
         **MOTION FOR SUMMARY JUDGMENT GRANTED**
         **October 13, 2021**

*DNA*
*PAB*
*TGC*

This is a workers' compensation case. In their writ application, Relators, Willie's Chicken Shack and its insurer, AmStar North America, (hereinafter collectively referred to as "Relators"), seek review of the June 7, 2021 judgment of the Workers' Compensation Judge (hereinafter referred to as "WCJ"), denying their motion for summary judgment which sought dismissal of the workers' compensation claim filed by Respondent, Nicholas Knox (hereinafter referred to as "Mr. Knox"). For the following reasons, we grant the writ, reverse the WCJ's judgment, and grant the motion for summary judgment.

## FACTUAL BACKGROUND

In early 2019, Elite Protection Solutions (hereinafter referred to as "Elite") hired Mr. Knox as a security guard.[1] During Mr. Knox's employment with Elite, Elite assigned Mr. Knox to shifts at various locations, namely a sandwich shop, a grocery store, and Willie's Chicken Shack. On February 24, 2019, Elite assigned Mr. Knox to the Bourbon Street location of Willie's Chicken Shack. According to Mr. Knox, this constituted the third or fourth time that Elite had assigned him to a shift at Willie's Chicken Shack. During the shift, Mr. Knox and a patron became

---

[1] Mr. Knox testified in his deposition that he had been working for Elite for "a month" by the date of the subject incident, which occurred on February 24, 2019.

1

involved in an altercation inside the premises of Willie's Chicken Shack. Ultimately, Mr. Knox was shot in the neck.

Prior to Mr. Knox's employment with Elite, Elite and Willie's Chicken Shack, entered into a "Security Services Agreement" on January 18, 2019. The Security Services Agreement identifies Elite as the "Contractor" and Willie's Chicken Shack as the "Client." The Security Services Agreement reads, in pertinent part:

> WHEREAS, the Contractor is engaged in the business of providing security services, and
>
> WHEREAS, the Client requires the services of a security firm for an event which it plans to hold.
>
> NOW, THEREFORE, in consideration of the mutual promises contained herein, the Client engages the Contractor to provide security services under the following terms and conditions:
>
> 1. The Contractor shall furnish security guard(s) (the "Guard(s)") at the premises located [on Bourbon Street in New Orleans] (the "Premises"). The Guard(s) will be in uniform and armed. They will provide security to persons and property at the Premises. All services shall be performed in accordance with applicable laws and ordinances.
>
> 2. The event for which security services will be provided by the Contractor pursuant to this Agreement will be Willie's Chicken Shack located on [] Bourbon Street DEPLOYED FOR CROWD, ACCESS CONTROL, AND GENERAL SECURITY for which security services will be provided from FRIDAY[,] JANUARY 25, 2019 to THURSDAY[,] APRIL 25, 2019.
>
> . . . .
>
> 4. The Client shall compensate the Contractor at the rate of SEVENTEEN DOLLARS FIFTY CENTS [] ($17.50) per hour for each Guard on duty. . . .
>
> 5. The Guard(s) shall be employees of the Contractor. The Contractor shall be responsible for the hiring, supervision, scheduling and compensation of the Guard(s). The Guard(s) shall not for any purpose be deemed to be employees of the Client.

2

. . . .

[7.] The Contractor shall also maintain workers' compensation insurance for its employees. Prior to the performance of services pursuant to this Agreement, the Contractor or its insurer will provide the Client with a Certificate of Insurance showing that such coverage[] [is] in effect.

A representative from both Elite and Willie's Chicken Shack signed the Security Services Agreement.

## PROCEDURAL HISTORY

On April 12, 2019, Mr. Knox filed a disputed claim for compensation against Elite and against Willie's Chicken Shack for injuries he sustained during the altercation. On his claim form, Mr. Knox indicated that he received treatment for his injuries at Our Lady of the Lake Urgent Care and Our Lady of the Lake Hospital. He stated that no wage benefits had been paid to him and that no medical treatment had been authorized.

On March 13, 2020, Mr. Knox submitted to a deposition. In pertinent part, counsel for Relators elicited the following testimony during the deposition:

Counsel: And Elite would send you to different - -

Mr. Knox: Yeah, different spots, yeah, different spots.

Counsel: They would tell you where to go work?

Mr. Knox: Yeah, we would meet up on Canal Street and [the manager of Elite would] send you to a certain spot, on Bourbon, on Canal Street. That's how they do it.

Counsel: How many different places did you work for while working for Elite?

Mr. Knox: It was two. I worked at a - - three. I worked at a sandwich store, worked at a regular store, like a regular grocery store, and I worked at Willie's - - Willie's Chicken Shack.

. . . .

3

Counsel: And would [the owner of Elite] tell you what hours you were going to be there?

Mr. Knox: Yeah.

Counsel: Were you given any special instructions depending on where you were going?

Mr. Knox: No.

Counsel: Did [you all] - - were [you all] given any information about what your job would require as far as - -

Mr. Knox: You know, basic instructions, like, you know, once you get there they tell you they want you to stand here, look over, watch, if it get[s] too crowded, walk around. You know, basic instructions.

Counsel: Instructions from Elite?

Mr. Knox: Elite, yeah, and Willie's - - Willie's Chicken Shack whoever the manager [was] at Willie's Chicken Shack.

Counsel: Right. It's [the owner of Elite] who's telling you where to go, - -

Mr. Knox: Yeah.

Counsel: - - what to do, and how to do your job?

Mr. Knox: Yeah.

Counsel: That's who you answer to?

Mr. Knox: Yeah.

Counsel: And [the owner] of Elite is the one that told you where to go, how to do your job, and he told you that if you had any issues or problems to call [the owner of Elite]?

Mr. Knox: Yeah.

. . . .

Counsel: That was your own gun?

Mr. Knox: My own weapon.

. . . .

4

Counsel:     And who were you paid by?

  . . .

Mr. Knox:    Yeah, Elite.

  . . . .

Counsel:     How many times had you worked at Willie's Chicken Shack prior to the incident that we're here for today?

Mr. Knox:    It was about three times. About two or three times.

  . . . .

Counsel:     You go in, you - - did you have somebody at Willie's Chicken Shack that was - - that you checked in with?

Mr. Knox:    You know, like if the manager - - you know, you normally have a manager there, like the manager, you got to let him know, okay, I'm here, sign the paper, and go to your spot.

Counsel:     And where was your spot?

Mr. Knox:    You know, either you go to the front - - they mostly want you to stand in the front by the doorway.

  . . . .

Counsel:     And you would go in and you would go to your spot and you just basically stay there?

Mr. Knox:    Yeah, just check around, make sure nothing happen, nobody stealing, nobody throwing up, you know.

  . . . .

Counsel:     So the first two times - - the first two days, whoever the manager was, didn't tell you anything about your job, what you're doing or what you needed to do?

Mr. Knox:    No, it was everything was all good.

Counsel:     And he didn't tell you to go here or go there, you basically, based on your experience and your knowledge and what you had learned, it was up to you to decide how to - -

5

. . . .

Mr. Knox:   Normally they will tell you where they want you to be at. Like being on the - - tell you, point, by the doorway, stand right there. Make sure the doorway [is] clear. If it get[s] crowded, walk around some. That was the basic instruction, that's what they wanted you to do.

. . . .

Counsel:    How would Elite know that you worked from X time to Y time?

Mr. Knox:   Well, you know, every - - probably about every good two hours [someone from Elite would] come check on you.

. . . .

Counsel:    What did the [Willie's Chicken Shack manager] tell you?

Mr. Knox:   He [never] really had to tell me "Go here, go there." Like it just like, say if I'm watching something else, or I'm looking up, just paying attention, looking around somewhere else, and they have like somebody walk to the back and I don't see them, he'll try - - he'll like tell me go, you know, like he point[s] at them, and I go back there and tell them, "Well, you can't be back here." Like it would be like that - - like that will rarely happen, though, but that's going to be about it.

Counsel:    So basically, in each shift, it was rare that he would tell you to go there and go there?

Mr. Knox:   Yeah, I always knew, yeah, what to do.

Counsel:    The rest of the time you were on your own, you knew what to do?

Mr. Knox:   Yeah.

Counsel:    And did you have any other communications with the manager, other than "Go there," or "Go there" while you were working at the Willie's Chicken Shack on Bourbon Street?

Mr. Knox:   No, that's it.

| Counsel: | So you were basically on your own on how to do your job? |
|---|---|
| Mr. Knox: | Yeah. |
| Counsel: | And if you had any issues, it would be with - - you report to [Elite] - - |
| Mr. Knox: | Yeah. |
| | . . . . |
| Counsel: | If you had any issues over how to - - on how to do your job, or an event that was happening - - |
| Mr. Knox: | Yeah. |
| Counsel: | - - that's who you would contact? |
| Mr. Knox: | Yes, sir. |

As counsel began to question Mr. Knox about the subject incident, the following colloquy occurred:

| Mr. Knox: | Yeah I don't remember the day. So I'm patrolling, I see a [woman], she's standing in the doorway. So knowing my job to don't let the doorway get crowded, don't let [anybody] stand in the doorway. I walk up to her, "Excuse me, ma'm, they don't want [anybody] standing in the doorway." |
|---|---|
| Counsel: | Okay, nobody told you to go up and do that, you did that - - |
| Mr. Knox: | Yeah, I did myself. |
| Counsel: | - - because you knew that was part of your job - - |
| Mr. Knox: | Yeah. |

Mr. Knox then explained that after the woman cleared the doorway, her male companion confronted him and punched him in the face. Mr. Knox testified that the man then reached for his weapon, and a struggle for the weapon ensued. Mr.

Knox stated that, ultimately, the man took hold of the gun and shot him in the neck.

On November 16, 2020, Relators filed a motion for summary judgment. In the motion, Relators sought dismissal of Mr. Knox's claim with prejudice on the basis that there was no genuine issue of material fact concerning Mr. Knox's status as an independent contractor. Relators asserted that Mr. Knox's status as an independent contractor meant that Mr. Knox was not entitled to workers' compensation benefits from Willie's Chicken Shack under Louisiana law. In support of their motion, Relators attached the Security Services Agreement between Elite and Willie's Chicken Shack to support their contention that Mr. Knox was an independent contractor. Relators also offered the affidavit of the account manager for Willie's Chicken shack, Dorothy Gioia, who identified the Security Services Agreement. Additionally, Relators submitted Mr. Knox's deposition.

Mr. Knox filed an opposition to the motion for summary judgment, in which he argued that Relators failed to establish that no genuine issue of material fact remained. In particular, Mr. Knox asserted that there was a genuine issue of material fact as to whether he fell under the manual labor exception to the independent contractor statute. Mr. Knox contended that he fell under the manual labor exception because "[n]early 100% of a security guard's job is anticipation of physical activity." Further, he asserted that "[w]ithout security [Willie's Chicken Shack] cannot operate safely or effectively." Mr. Knox attached his deposition transcript in support of his opposition.

On May 25, 2021, the WCJ held a hearing on Relators' motion for summary judgment and, thereafter, took the matter under advisement. On June 7, 2021, the

8

WCJ issued a judgment, which denied Relators' motion for summary judgment. In written reasons for judgment, the WCJ concluded that there existed a genuine issue of material fact regarding whether the manual labor exception of the independent contractor statute applied to Mr. Knox. Thereafter, Relators filed their writ application with this Court.

## STANDARD OF REVIEW

An appellate court applies the *de novo* standard of review in examining a lower court's ruling on a motion for summary judgment. This Court, in *Pilet v. Pilet Distributors*, addressed the standard of review on motions for summary judgment as follows:

> An appellate court conducts a *de novo* review, applying the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Brown v. Amar Oil Co.*, 2011-1631, p. 2 (La. App. 1 Cir. 11/8/12), 110 So.3d 1089, 1090 (citing *Sanders v. Ashland Oil, Inc.*, [19]96-1751, p. 6 (La. App. 1 Cir. 6/20/97), 696 So.2d 1031, 1035). A motion for summary judgment should only be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. *Collins v. Randall*, 2002-0209, p. 3 (La. App. 1 Cir. 12/20/02), 836 So.2d 352, 354. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. *King v. Allen Court Apartments II*, 2015-0858, p. 3 (La. App. 1 Cir. 12/23/15), 185 So.3d 835, 837, *writ denied*, 2016-0148 (La. 3/14/16), 189 So.3d 1069. This procedure is favored and shall be construed to accomplish these ends. *Id.*; *see also* La. C.C.P. Art. 966 A(2).

> The initial burden of proof rests on the moving party. La. C.C.P. Art. 966 D(1). However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather, to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. *King*, 2015-0858 at p. 3, 185 So.3d at 838. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of

material fact. *Id.* It is only after the motion has been made and properly supported that the burden shifts to the non-moving party. *Brown*, 2011-1631 at p. 3, 110 So.3d at 1090-91; *Pugh v. St. Tammany Parish School Bd.*, 2007-1856, p. 3 (La. App. 1 Cir. 8/21/08), 994 So.2d 95, 98.

A genuine issue is a triable issue. *Brown*, 2011-1631, p. 3, 110 So.3d at 1090-91. *Jones v. Stewart*, 2016-0329, p. 7 (La. App. 4 Cir. 10/5/16), 203 So.3d 384, 389, *writs denied*, 2016-1962, 2016-1967 (La. 12/16/16) [212 So.3d. 1174, 1175], 211 So.3d. 1169, 2016 WL 7638451, 2016 WL 7638388. More precisely, an issue is genuine if reasonable persons could disagree. *Id.* If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. *Id.* A fact is material when its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery. *Id.* Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. *Id.*; *King v. Illinois Nat. Ins. Co.*, [20]08-149, p. 6 (La. 4/3/09), 9 So.3d 780, 784. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of substantive law applicable to the case. *Brown*, 2011-1631 at p. 3, 110 So. 3d at 1091; *Hall v. Our Lady of the Lake R.M.C.*, 2006-1425, p. 9 (La. App. 1 Cir. 6/20/07), 968 So.2d 179, 185.

In order to determine whether the trial court's grant of summary judgment was proper, this court must look to the applicable substantive law.

2020-0319, pp. 5-7 (La. App. 4 Cir. 12/30/20), 312 So.3d 1154, 1159 (quoting

*Alexander v. Hancock Bank*, 2016-0662, pp. 2-4 (La. App. 4 Cir. 2/8/17), 212

So.3d 713, 715-16). The applicable substantive law in this matter is the Louisiana

Workers' Compensation Law.

## DISCUSSION

Relators assert that the WCJ erred in denying their motion for summary

judgment, finding that there exists a genuine issue of material fact regarding

whether the manual labor exception to the independent contractor statute, La. R.S.

23:1021(7), applies to Mr. Knox. In opposition, Relators argue that Mr. Knox is an

independent contractor and that Mr. Knox failed to prove that a "substantial part" of his work consisted of manual labor.

Mr. Knox does not dispute that he is an independent contractor.[2] However, Mr. Knox claims that the manual labor exception to La. R.S. 23:1021(7), which defines "independent contractor", applied to provide him coverage under the Louisiana Workers' Compensation Law. Mr. Knox contends that material factual issues exist as to the application of the manual labor exception.

We begin our *de novo* review with an examination of the Louisiana Workers' Compensation Law, which is found at La. R.S. 23:1020.1, *et seq*, and provides the applicable substantive law. La. R.S. 23:1044 states that "[a] person rendering service for another in any trades, businesses or occupations covered by [the Louisiana Workers' Compensation Law] is presumed to be an employee under [the Louisiana Workers' Compensation Law]." However, an alleged employer may rebut the presumption of employment by establishing that the worker was not working as the alleged employer's employee for workers' compensation purposes. *Wilfred v. A. Service Cab Co.*, 2014-1121, p. 3 (La. App. 4 Cir. 5/27/15), 171 So.3d 1007, 1010 (citing *Campora v. Falstaff, L.L.C.*, 2001-2014, p. 3 (La. App. 4 Cir. 6/12/02), 823 So.2d 389, 391). "An alleged employer can rebut this presumption by either (i) establishing that the services were not 'pursuant to any trade, business, or occupation (e.g., construction of one's private residence);' or (ii) establishing that 'the individual was performing services but was doing so as an independent contractor.'" *Hillman v. Comm-Care, Inc.*, 2001-1140, p. 6 (La.

---

[2] Mr. Knox did not file an opposition to Relators' writ application with this Court. Mr. Knox's counterarguments come from the opposition to the motion for summary judgment that Mr. Knox filed with the WCJ and from oral argument presented by Mr. Knox's counsel before this Court.

11

1/15/02), 805 So.2d 1157, 1161 (quoting 1 Denis Paul Juge, *Louisiana Workers'*
*Compensation* § 7:1 (2001)).

The Louisiana Workers' Compensation Law defines "independent
contractor" but also provides an exception to the exclusion of independent
contractors from the Louisiana Workers' Compensation Law, namely the manual
labor exception. Specifically, La. R.S. 23:1021(7) provides:

> "Independent Contractor" means any person who renders service,
> *other than manual labor*, for a specified recompense for a specified
> result either as a unit or as a whole, under the control of his principal
> as to results of his work only, and not as to the means by which such
> result is accomplished, and are expressly excluded from the provisions
> of this Chapter *unless a substantial part of the work time of an
> independent contractor is spent in manual labor by him in carrying
> out the terms of the contract, in which case the independent
> contractor is expressly covered by the provisions of this Chapter*. The
> operation of a truck tractor or truck tractor trailer, including fueling,
> driving, connecting and disconnecting electrical lines and air hoses,
> hooking and unhooking trailers, and vehicle inspections are not
> manual labor within the meaning of this Chapter.

(Emphasis added.) A workers' compensation claimant who seeks to invoke the
manual labor exception must prove four factors: "(i) The existence of an
independent contractor relationship; (ii) The performance of manual labor in
carrying out the contract; (iii) The independent contractor spent a substantial
portion of the work time performing manual labor; and (iv) The work was part of
the principal's trade, business, or occupation." *Orozco v. Filser Constr.*, 2018-
0274, p. 9 (La. App. 4 Cir. 10/3/18), 318 So.3d 99, 106 (citing *Lushute v. Diesi*,
354 So.2d 179, 182 (La. 1977); *Riles v. Truitt Jones Constr.*, 1994-1224, p. 4 (La.
1/17/95), 648 So.2d 1296, 1298; *Martinez v. Jaroslav Rames/World of Taste, LLC*,
2017-0977, pp. 2-3 (La. App. 4 Cir. 5/9/18), 245 So.3d 78, 80).

In their motion for summary judgment, Relators met their initial burden of
proof by submitting the Security Services Agreement and Mr. Knox's deposition

testimony to demonstrate that Mr. Knox was an independent contractor for Willie's Chicken Shack and, thus, not entitled to workers' compensation benefits from Willie's Chicken Shack. *See* La. C.C.P. Art. 966 D(1); *Hillman*, 2001-1140, p. 6, 805 So.2d at 1161. After that, the burden shifted to Mr. Knox to prove that he qualified for the manual labor exception by proving the four manual labor exception factors. *See* La. C.C.P. Art. 966 D(1); *Orozco*, 2018-0274, p. 9, 318 So.3d at 106. We address whether Mr. Knox proved each of these factors in turn.

*Existence of an Independent Contractor Relationship*

First, we consider whether Mr. Knox proved the existence of an independent contractor relationship. This Court has explained that "the distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis." *Theodore v. Krazy Korner*, 2012-0173, p. 4 (La. App. 4 Cir. 5/23/12), 95 So.3d 572, 574 (quoting *Tate v. Progressive Sec. Ins. Co.*, 2008-0950, p. 2 (La. App. 4 Cir. 1/28/09), 4 So.3d 915, 916). "[T]he substance of the relationship" rather than "the label . . . determines whether an independent contractor recovers workers' compensation benefits." *Steinfelds v. Villarubia*, 2010-0975, p. 9 (La. App. 4 Cir. 12/15/10), 53 So.3d 1275, 1281 (citing *Fleniken v. Entergy Corp.*, 2000-1824, p. 21 (La. App. 1 Cir. 2/16/01), 780 So.2d 1175, 1190).

To determine whether the substance of the relationship constitutes one of a principal and an independent contractor, courts consider the following factors:

1. There is a valid contract between the parties;

2. The work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it;

3. The contract calls for specific piecework as a unit to be done according to the independent contractor's own methods without

13

being subject to the control and direction of the principal, except as to the result of the services to be rendered;

4. There is a specific price for the overall undertaking; and

5. Specific time or duration is agreed upon and not subject to termination at the will of either side without liability for breach.

The most important element is the right of control and supervision over an individual. It is not the supervision and control which is actually exercised which is significant; the important question is whether, from the nature of the relationship, the right to do so exists.

*Course v. Fox Wolff Constr.*, 2008-0058, pp. 4-5 (La. App. 5 Cir. 5/27/08), 987 So.2d 277, 280 (citing *Hickman v. S. Pac. Transp. Co.*, 262 So.2d 385, 390-91 (La. 1972); *Whitlow v. The Shreveport Times*, 2002-1215, pp. 3-4 (La. App. 3 Cir. 4/23/03), 843 So.2d 665, 668).

At the outset, we note that neither Relators nor Mr. Knox appear to dispute that Mr. Knox was an independent contractor. Additionally, the record supports a finding that Mr. Knox was an independent contractor. First, there is a valid contract, namely the Security Services Agreement executed between Elite and Willie's Chicken Shack, which provided that Elite would supply security guards, such as Mr. Knox, for the Willie's Chicken Shack located on Bourbon Street. The Agreement stated that the security guards were the employees of Elite. The agreement specifically stated that Elite "shall be responsible for the hiring, supervision, scheduling and compensation of the Guard(s). The Guard(s) shall not for any purpose be deemed to be employees of" Willie's Chicken Shack. The agreement further provides that Elite "shall also maintain workers' compensation for its employees."

Turning to the second and third factors, Elite's and Mr. Knox's work was of an independent nature and called for a specific piecework as a unit, namely to

14

provide security to persons and property at the Bourbon Street location of Willie's Chicken Shack. In this regard, Mr. Knox testified in his deposition that Elite gave him basic instructions to follow the directions of the client and that Elite personnel checked in with him about every two hours just to ensure that he was working. Mr. Knox also testified that when he checked in with Willie's Chicken Shack's manager, the manager might tell him to stand in front of the restaurant by the doorway. Otherwise, Mr. Knox's testimony reveals that he was basically on his own as to how to do his job and received little to no control and direction as to how to perform his job. Additionally, Mr. Knox provided his own weapon for the job. Fourth, the Security Services Agreement lists an hourly compensation rate that Willie's Chicken Shack paid to Elite per security guard on duty. Mr. Knox acknowledged in his deposition that Elite paid him for his work, not Willie's Chicken Shack. Fifth, and finally, the Security Services Agreement set a time frame as to when Elite would provide security guards to Willie's Chicken Shack's Bourbon Street location, specifically from Friday January 25, 2019, to Thursday April 25, 2019. Elite told Mr. Knox where he would be working each day, i.e. for which client, and for how long his shift would be. In sum, the record supports a finding that Mr. Knox worked as an independent contractor at the time of the subject incident.

### Performance of Manual Labor in Carrying Out the Contract; Substantial Part of Work Time Performing Manual Labor

Next, we consider the second and third factors, i.e. whether Mr. Knox proved that he performed manual labor and whether he spent a substantial part of his work time performing manual labor. We discuss these two elements in conjunction with each other because, as this Court has stated, as "virtually all work

includes some degree of manual labor, the real question presented is whether a substantial part of [the] work was manual labor. 'Whether a substantial part of one's job involves manual labor is a factual determination addressed on a case-by-case basis.'" *Orozco*, 2018-0274, p. 14, 318 So.3d at 109 (citing *Smith v. Moreau*, 2017-0003, p. 9 (La. App. 1 Cir. 6/2/17), 222 So.3d 761, 768).

The phrases "manual labor" and "substantial part" are not defined in the Louisiana Workers' Compensation Law. *Orozco*, 2018-0274, p. 10, 318 So.3d at 106-07 (citing La. R.S. 23:1021(7)). In discussing "manual labor," the Louisiana Supreme Court has explained:

> It is the hands-on feature of labor combined with the strenuous quality of the work which determines whether a task is manual or not.
>
>     . . . .
>
> The jurisprudence has uniformly defined "manual labor" as work where the "physical" element predominated over the "mental" element. This is the correct interpretation of the term "manual labor" . . . .

*Riles*, 1994-1224, p. 10, 648 So.2d at 1300. Further, discussing the phrase "substantial part," the *Riles* Court observed:

> While in some legal senses "substantial" indeed has the signification of the larger part, such as in "substantial compliance", legally the words "substantial part" also are used not as a term of mathematical precision, but also so as to mean the converse of insubstantial or immaterial.

*Id.* (quoting *Welch v. Newport Indus.*, 86 So.2d 704, 707 (La. App. 1 Cir. 1956)). In sum, "manual labor" consists of work in which the physical predominates over the mental; and a "substantial part" of work time is spent performing manual labor at a rate that is more than "insubstantial or immaterial." *Id.*

In *Riles*, the plaintiff was the sole proprietor of a cabinet-making business, and he was injured while installing custom made cabinets for the defendant. In

finding that the plaintiff spent a substantial part of his time engaging in manual labor, the Louisiana Supreme Court stated, in pertinent part:

> [Plaintiff] personally built and installed the cabinets. . . At the end of the day, it was his hands which were dirty and his back which was sore from the work which he performed. . . .
>
> . . . .
>
> [Plaintiff] spent considerable time and effort in constructing custom cabinets . . . . Additionally, he spent three days transporting and installing these cabinets. Both the construction and the installation of the cabinets entailed the expenditure of manual labor at a level greater than "insubstantial or immaterial". [Plaintiff] spent a substantial part of his time in manual labor.

*Riles*, 1994-1224, pp. 10-11, 648 So.2d at 1300.

Mr. Knox contends in his opposition to the motion for summary judgment that his work as a security guard at Willie's Chicken Shack involved manual labor and that this constituted a substantial part of his work time because he was "present in order to get physical if necessary" and that "[n]early 100% of a security guard's job is anticipation of physical activity." Our review of the record shows that Mr. Knox's job as security guard was to visually watch the activities of the patrons and to make mental assessments as to if there were any potential security issues which may arise from the patrons' behavior. Additionally, Mr. Knox's deposition testimony reveals that the mental element of the security job predominated over the physical element because he spent most of his time mentally analyzing for, and anticipating the potential for, engaging in the physical element of his job. *See Riles*, 1994-1224, p. 10, 648 So.2d at 1300. The Louisiana Workers' Compensation Law and the jurisprudence interpreting it require a claimant seeking the manual labor exception to demonstrate that he actually engaged in manual labor, not that he merely *anticipated* manual labor. *Id. See also* La. R.S. 23:1021(7). Mr. Knox's

17

assertion that nearly 100% of his job was the anticipation of manual labor only serves to sustain a finding that his job was more mental than physical. In his opposition to the motion for summary judgment, Mr. Knox even conceded that "[i]f the shift were uneventful, the job of security guard could be more mental than physical." We find that Mr. Knox has failed to demonstrate that he engaged in manual labor wherein the physical element of work predominated the mental element.

Further, to the extent Mr. Knox contends that he performed manual labor at the time of the subject incident, i.e. that his injuries occurred during a physical altercation with a patron, Mr. Knox has not demonstrated that he performed manual labor during a "substantial part" of his work time. Other than the subject incident, Mr. Knox has not pointed to any instances or tasks to show that he engaged in manual labor for a substantial part of his work time. He has not shown manual labor "at a level greater than 'insubstantial or immaterial'" like the plaintiff in *Riles*, who spent time constructing cabinets and three days transporting and installing these cabinets. 1994-1224, p. 11, 648 So.2d at 1300. Accordingly, we conclude that Mr. Knox failed to prove that he engaged in manual labor as a substantial part of his work time for Willie's Chicken Shack.

### Work Was Part of the Principal's Trade, Business or Occupation

Last, we consider whether Mr. Knox proved that his work was part of Willie's Chicken Shack's trade, business or occupation. To this end, Mr. Knox asserts that "[w]ithout security the restaurant cannot operate safely or effectively, even if no violence occurred".

"[W]ork shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to

generate that individual principal's goods, products, or services." La. R.S. 23:1061(A)(1). "Whether work performed by an independent contractor is a part of the trade, business or occupation of the principal is a factual issue which must be determined under the circumstances of each case." *Lushute*, 354 So.2d at 183. In *Lushute*, the plaintiff sought worker's compensation death benefits after her husband died as a result of injuries sustained while repairing an air conditioning system at a restaurant, Little Capitol, owned by the defendant. In considering whether the manual labor exception applied to decedent's work, the Louisiana Supreme Court concluded that he had been an independent contractor and spent a substantial portion of his work time in manual labor prior to the accident. In analyzing whether the decedent's repair of the air-conditioning system was a part of the trade, business or occupation of Little Capitol, i.e. the restaurant business, the Louisiana Supreme Court stated:

> Under the facts of this case, we do not consider that the work performed by [the decedent] in repairing the air-conditioning system at the restaurant owned by Little Capitol was a part of Little Capitol's trade, business or occupation. A properly functioning air-conditioning system, although desirable from the viewpoint of customer comfort and satisfaction, is not necessary for the operation of a restaurant. The service rendered by decedent at the time of the accident was not a part of the restaurant business but was merely incidental thereto. Since we conclude that the decedent was not performing work which was a part of the trade, business or occupation of Little Capitol at the time of the accident, he was not an independent contractor entitled to coverage under the workmen's compensation act. Hence, we conclude that plaintiff is not entitled to recover workmen's compensation benefits from Little Capitol for [the decedent]'s death resulting from work-related injuries.

*Lushute*, 354 So.2d at 183. In sum, the plaintiff was not entitled to workers' compensation benefits because the Court found that decedent's work was "desirable" but "not necessary for the operation of a restaurant" and that his work was "not a part of the restaurant business but was merely incidental thereto." *Id.*

Mr. Knox's job as a security guard was to observe the activities of the patrons; to assess whether any potential security issues may arise from patrons' behavior; and to address any security issues as necessary. Like the air-conditioning repair in *Lushute*, these activities were "desirable" for employee and "customer comfort and satisfaction" but "not necessary for the operation of a restaurant" and Willie's Chicken Shack's business of serving food to patrons. 354 So.2d at 183. Mr. Knox's security duties were "not a part of [Willie's Chicken Shack's] business but . . . merely incidental thereto." *Id.* The fact that Mr. Knox performed the same duties in other types of businesses, namely a sandwich shop and a grocery store, indicate that these duties were not specific to the business of serving chicken. We find that Mr. Knox has not demonstrated that his job as a security guard is an integral part of Willie's Chicken Shack's business as a restaurant serving chicken.

In sum, our *de novo* review of the record shows that Mr. Knox proved only the first factor for a claimant to benefit from the manual labor exception, namely that he was an independent contractor for Willie's Chicken Shack. However, he failed to prove the second, third, and fourth factors. Mr. Knox did not show that he performed manual labor as a substantial part of his work time at Willie's Chicken Shack. Further, he did not demonstrate how his work was part Willie's Chicken Shack's business of serving chicken. Accordingly, the WCJ erred in finding that a genuine issue of material fact existed as to the manual labor exception and in denying Relators' motion for summary judgment.

**DECREE**

For the foregoing reasons, we grant the writ, reverse the WCJ's June 7, 2021 judgment that denied Relators' motion for summary judgment, and grant Relators' motion for summary judgment.

**WRIT GRANTED; JUDGMENT REVERSED; MOTION FOR SUMMARY JUDGMENT GRANTED**